**Anne P. NEWMAN, Sharon W. Neal and John Mungin, Appellants,**

v.

**PIGGIE PARK ENTERPRISES, INC., a Corporation and L. Maurice Bessinger, Appellees.**

**No. 10860.**

United States Court of Appeals Fourth Circuit.

Argued Feb. 6, 1967.

Decided April 24, 1967.

Matthew J. Perry, Columbia, S. C., and Michael Meltsner, New York City (Jack Greenberg, New York City, Lincoln C. Jenkins, Jr., and Hemphill P. Pride, II, Columbia, S. C., on brief), for appellants.

Alan G. Marer, Atty., Dept. of Justice (John Doar, Asst. Atty. Gen., David L. Norman, Michael Flicker and Alvin Hirshen, Attys., Dept. of Justice, on brief), for the United States, amicus curiae, and Samuel B. Ray, Jr., Barnwell, S. C., for appellees.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, BELL, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is a class action brought to obtain injunctive relief and the award of counsel fees under Title II of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000a to a–6. Plaintiffs appeal from the decision of the district court holding that Negro citizens may be barred on account of their race and color from buying and eating barbecue at certain drive-in restaurants in South Carolina. We disagree and reverse.*

The facts as found by the district court are not in dispute. Briefly stated,[1] Piggie Park Enterprises, Inc. (L. Maurice Bessinger is the principal stockholder and general manager) owns and operates five eating establishments specializing in southern style barbecue, all of which are located on or near interstate highways.[2]

All of Piggie Park's eating places are of the drive-in type. In order to be served, a customer drives upon the premises in his automobile and places his order through an intercom. When he pushes a button, his order is taken by an employee inside the building who is usually out of sight of the customer. A curb attendant delivers the food or beverage to the customer's car and collects for the same. Orders are served in disposable paper plates and cups. The food is served in such a way that it is ready for consumption. Half the customers eat it in their automobiles while parked on the premises. There are no tables, chairs, counters, bars, or stools at any of the drive-ins sufficient to accommodate any appreciable number of patrons.

Although Piggie Park and Bessinger denied in their Answer and two amended Answers that plaintiffs had been denied service at one or more of Piggie Park's drive-ins, it was uncontested at the trial that Piggie Park denied full and equal service to Negroes because of their race at all of its eating places.[3]

The district court erroneously concluded that Piggie Park's drive-ins were not covered by the federal public ac-

---

* Judge J. Spencer Bell voted in conference with the other members of the court to reverse. His untimely death on March 19, 1967, prevented his participation in the preparation of this opinion.

1. For a detailed statement see Newman v. Piggie Park Enterprises, Inc., 256 F. Supp. 941 (D.S.C.1966).

2. There was a sixth place, known as Little Joe's Sandwich Shop, held by the district court to be within 42 U.S.C.A. § 2000a(b) (2). Injunctive relief was granted and no appeal was taken.

3. The few Negro customers who have been served took their places and picked up their orders at the kitchen windows. They were not permitted to consume their purchases on the premises.

commodations law contained in the Civil Rights Act of 1964.[4] The court reasoned that the statute would not apply to a drive-in eating place unless a majority of the prepared food sold was actually consumed by the customers on the premises. It found from the testimony of Mr. Bessinger that fifty percent of his food volume was consumed on the premises and fifty percent off the premises, and from that finding of fact concluded that the drive-ins were *not* facilities "principally engaged in selling food for consumption on the premises."

Such a construction, we think, finds no support in congressional history. The Congress did not intend coverage of the Act to depend upon a head count of how many people eat on the premises or a computation of poundage or volume of food eaten. If it had so intended, it would have been a simple matter to change the questioned phrase "for consumption on the premises" to read "actually consumed on the premises."

During the House hearings,[5] the Attorney General said "the areas of coverage should be clear to both the proprietors and the public." If the "commerce" tests[6] are the principal criteria, and we think they are, clarity of coverage is promoted. A traveler can then intelligently assume that an eating place on an *interstate* highway is covered. Under the district court's fifty percent test of actual consumption on the premises, prospective Negro customers would have no idea whether or not they might be served and would continue to occupy the intolerable position—at least with respect to drive-ins—in which they found themselves prior to passage of the Act with respect to interstate travel.[7] In a mobile society, the ready availability of prepared, ready-to-eat food is a practical necessity—not a luxury.

In our view, the emphasis in the phrase "principally engaged in selling *food* for consumption on the premises" is properly on the word "food". The term "principally" did not appear in the bill as introduced. It was added by the

---

4. The pertinent provisions of the Act are: "§ 2000a. Prohibition against discrimination or segregation in places of public accommodation—Equal access
  "(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.
  *  *  *  *  *
  "(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
  "(1)  *  *  *
  "(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
  "(3)  *  *  *; and
  "(4)  *  *  *

  *  *  *  *  *
  "(c) The operations of an establishment affect commerce within the meaning of this subchapter if (1)  *  *  *. (2) in the case of an establishment described in paragraph (2) of subsection (b) of this section, it serves or offers to serve interstate travelers or a substantial portion of the food which it serves, or gasoline or other products which it sells, has moved in commerce;  *  *  *" 42 U.S.C.A. § 2000a(a)–(c).

5. Hearings on H.R. 7152 Before the House Committee on the Judiciary, 88th Cong., 1st Sess., pt. 4, at 2655 (1963).

6. There are two in the disjunctive: "(c) The operations of an establishment affect commerce  *  *  * if  *  *  * it serves or offers to serve interstate travelers *or* a substantial portion of the food which it serves  *  *  * has moved in commerce." 42 U.S.C.A. § 2000a(c).

7. That the test is absurdly impractical is illustrated by Bessinger's testimony that consumption on premises varied with the weather. On such a hypothesis, a given drive-in might be covered one day, week, or month, and not at other times.

House Judiciary Committee and retained in the same form when the House version of the coverage provisions was ultimately adopted in the Senate. Its inclusion was not intended to have any bearing upon the percentage of food consumed on the premises, but was intended only to exclude from coverage places where food service was incidental to some other business, e. g., bars and "Mrs. Murphy" tourist homes serving breakfast as a matter of convenience to overnight lodgers. Given the intention of Congress to eliminate bars,[8] the meaning of "principally" comes into clear focus. Nothing in the 1964 Act as introduced or in any revision made before its enactment except for the addition of the word "principally" would exclude bars (and other places such as bowling alleys and pool rooms) serving food as an incident to other business.

The words in the statute "for consumption on the premises" modify the prior word "food" and describe the *kind* of food sold by other facilities that are covered similar to restaurants, cafeterias, lunchrooms, lunch counters, and soda fountains. The Congress clearly meant to extend its power beyond the ordinary sit-down restaurant and just as clearly did not undertake to legislate with respect to grocery type food stores which would have been covered but for the modifying phrase "for consumption on the premises." Thus, food stores are *not* covered, but stores (or facilities) that sell food of a *particular type,* i. e., ready for consumption on the premises, *are* covered. What the customers actually *do* with the ready-to-eat food was

not the concern of the Congress—whether they eat it then and there or subsequently and elsewhere.

The sense of this plan of coverage is apparent. Retail stores, food markets, and the like were excluded from the Act for the policy reason that there was little, if any, discrimination in the operation of them. Negroes have long been welcomed as customers in such stores. See 110 Cong.Rec. 6533 (1954) (remarks of Senator Humphrey).

■■ Discrimination with respect to ready-to-eat food service facilities *was* a problem. When a substantial minority of American citizens are denied restaurant facilities—whether sit-down or drive-in—that are open to the public, unquestionably interstate commerce is burdened. Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 6, 13 L.Ed.2d 15 (1964). It was this evil the Congress sought to eliminate to the end that *all* citizens might freely and not inconveniently travel between the states. We think the Congress plainly meant to include within the coverage of the Act all restaurants, cafeterias, lunchrooms, lunch counters, soda fountains, and *all other facilities* similarly engaged as a main part of their business in selling food ready for consumption on the premises. We are further of the opinion that the statutory language accomplished that purpose.

## COUNSEL FEES

■ Title II as a whole demonstrates that the Congress intended to assure rapid and effective compliance with its terms.[9] 42 U.S.C.A. Section 2000a–3(b)

---

8. See statement of Senator Magnuson, Chairman of the Senate Committee on Commerce and principal floor spokesman in the Senate for Title II, that "a bar in the strict sense of that word would not be covered by Title II since it is not 'principally engaged in selling food for consumption on the premises'." 110 Cong.Rec. 7406 (1964).
We find no legislative history suggesting that "principally" was inserted to eliminate eating places doing a predominantly carry-out service.

9. Thus, 42 U.S.C.A. § 2000a-3(a) permits intervention by the Attorney General in privately initiated public accommodation suits, appointment of counsel for a person aggrieved, and "the commencement of the civil action without the payment of fees, costs or security." 42 U.S.C.A. § 2000a-5 authorizes the Attorney General to commence litigation where there is "a pattern or practice of resistance to the full enjoyment" of Title II rights. 42 U.S.C.A. § 2000a-2 broadly prohibits any attempt to punish, deprive, or interfere

authorizes the court in its discretion, to allow the prevailing party (other than the United States) a reasonable attorney's fee as part of the costs. By reason of our reversal of the district court, the plaintiffs now become the "prevailing party", and on remand we instruct the district court to consider the allowance of counsel fees, whether in whole or in part.

▊ In exercising its discretion, the district court may properly consider whether any of the numerous defenses interposed by defendants were presented for purposes of delay and not in good faith. But the test should be a subjective one, for no litigant ought to be punished under the guise of an award of counsel fees (or in any other manner) from taking a position in court in which he honestly believes—however lacking in merit that position may be.

The court may also consider whether the defendants acted in good faith in denying discrimination against Negroes and thus requiring proof of what was subsequently conceded to be true. A litigant who increases the burden upon opposing counsel by such tactics ought ordinarily bear the cost of unnecessary trial preparation. The so-called "general denial" is not countenanced by the Federal Rules of Civil Procedure.

Reversed and remanded for consideration of the award of counsel fees.

WINTER, Circuit Judge, with whom SOBELOFF, Circuit Judge, joins (concurring specially):

Wholeheartedly I agree that Title II of the Civil Rights Act of 1964, 42 U.S. C.A. § 2000a et seq., is applicable to Piggie Park's drive-in type facilities, and I join in the reasons advanced for that conclusion. I agree also that the case should be remanded for consideration of an award of counsel fees, but I conclude that good faith, standing alone, should not always immunize a defendant from an award against him. Specifically, in this case, defendants are not entitled to the defense of good faith in regard to the major portion of their defenses.

The district judge is told that in exercising his discretion he should "consider whether any of the numerous defenses interposed by defendants were presented for purposes of delay and not in good faith" because no defendant ought to be punished for "taking a position in court in which he honestly believes— *however lacking in merit that position may be.*" (emphasis supplied) In this case, defendants interposed defenses patently frivolous, and I would not permit them to avoid the costs of overcoming such defenses on a purely subjective test of good faith.

In providing for counsel fees, the manifest purposes of the Act are to discourage violations, to encourage complaints by those subjected to discrimination and to provide a speedy and efficient remedy for those discriminated against. If counsel fees are withheld or grudgingly granted, violators feel no sanctions, victims are frustrated and instances of unquestionably illegal discrimination may well go without effective remedy. To immunize defendants from an award of counsel fees, honest beliefs should bear some reasonable relation to reality; never should frivolity go unrecognized.

While the threat of an award of counsel fees ought not to be used to discourage non-frivolous defenses asserted in good faith, the district court should be instructed to make an allowance in regard to some of defendants' defenses and, in its discretion, to consider an allowance for the remainder of defendants' defenses depending upon its determination of defendants' good faith and honest belief. Those clearly compensable are defendants' assertion that their "Little Joe's Sandwich Shop," a sit-down facility shown overwhelmingly by the proof to be a place where service was refused to Negro citizens, was not subject to the Act. The fact that the

with rights to equal public accommodations. See State of Georgia v. Rachel,

384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966).

defendants had discriminated both at Piggie Park's drive-ins and at Little Joe's Sandwich Shop was of course known to them, yet they denied the fact and made it necessary for the plaintiffs to offer proof, and the defendants could not and did not undertake at the trial to support their denials. Includable in the same category are defendants' contention, twice pleaded after the decision in Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 6 (1964), that the Act was unconstitutional on the very grounds foreclosed by *McClung;* and defendants' contention that the Act was invalid because it "contravenes the will of God" and constitutes an interference with the "free exercise of the Defendant's religion." The district judge should be told that, in awarding counsel fees, he should include an amount which fully compensates plaintiffs for the time, effort and expenses of counsel in overcoming these elements of expense needlessly imposed on them.

Only as to the remaining defenses do I think that defendants' good faith is the issue. If good faith is found not to have existed as to them, an additional award of counsel fees on a like basis should be made.