NEWMAN ET AL. *v.* PIGGIE PARK ENTER-
PRISES, INC., ET AL.

No. 339. Argued March 7, 1968.—Decided March 18, 1968.

*Jack Greenberg* argued the cause for petitioners. With
him on the brief were *James M. Nabrit III, Michael
Meltsner, Matthew J. Perry, Lincoln C. Jenkins, Jr.,*
and *Hemphill P. Pride II.*

No appearance for respondents.

PER CURIAM.

The petitioners instituted this class action under Title
II of the Civil Rights Act of 1964, § 204 (a), 78 Stat. 244,
42 U. S. C. § 2000a–3 (a), to enjoin racial discrimina-
tion at five drive-in restaurants and a sandwich shop
owned and operated by the respondents in South Caro-
lina. The District Court held that the operation of each
of the respondents' restaurants affected commerce within
the meaning of § 201 (c)(2), 78 Stat. 243, 42 U. S. C.
§ 2000a (c)(2), and found, on undisputed evidence, that
Negroes had been discriminated against at all six of the
restaurants. 256 F. Supp. 941, 947, 951. But the Dis-
trict Court erroneously concluded that Title II does not
cover drive-in restaurants of the sort involved in this
case. 256 F. Supp., at 951–953. Thus the court en-

joined racial discrimination only at the respondents' sandwich shop. *Id.,* at 953.

The Court of Appeals reversed the District Court's refusal to enjoin discrimination at the drive-in establishments, 377 F. 2d 433, 435–436, and then directed its attention to that section of Title II which provides that "the prevailing party" is entitled to "a reasonable attorney's fee" in the court's "discretion." § 204 (b), 78 Stat. 244, 42 U. S. C. § 2000a–3 (b).[1] In remanding the case, the Court of Appeals instructed the District Court to award counsel fees only to the extent that the respondents' defenses had been advanced "for purposes of delay and not in good faith." 377 F. 2d, at 437. We granted certiorari to decide whether this subjective standard properly effectuates the purposes of the counsel-fee provision of Title II of the Civil Rights Act of 1964. 389 U. S. 815. We hold that it does not.

When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law.[2] A Title II suit is thus private in form only.

---

[1] "In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person." 42 U. S. C. § 2000a–3 (b).

[2] In this connection, it is noteworthy that 42 U. S. C. § 2000a–3 (a) permits intervention by the Attorney General in privately initiated Title II suits "of general public importance" and provides that, "in such circumstances as the court may deem just," a district court may "appoint an attorney for [the] complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security." Only where a "pattern or practice" of discrimination is reasonably believed to exist may the Attorney General himself institute a civil action for injunctive relief. 42 U. S. C. § 2000a–5.

When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority.[3] If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.[4]

It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. Because no such circumstances are present here,[5] the District Court on remand should

---

[3] See S. Rep. No. 872, 88th Cong., 2d Sess., pt. 1, at 11, 24 (1964); H. R. Rep. No. 914, 88th Cong., 1st Sess., pt. 1, at 18 (1963); H. R. Rep. No. 914, 88th Cong., 1st Sess., pt. 2, at 1–2 (1963).

[4] If Congress' objective had been to authorize the assessment of attorneys' fees against defendants who make completely groundless contentions for purposes of delay, no new statutory provision would have been necessary, for it has long been held that a federal court may award counsel fees to a successful plaintiff where a defense has been maintained "in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 Moore's Federal Practice 1352 (1966 ed.).

[5] Indeed, this is not even a borderline case, for the respondents interposed defenses so patently frivolous that a denial of counsel fees to the petitioners would be manifestly inequitable. Thus, for example, the "fact that the defendants had discriminated both at [the] drive-ins and at [the sandwich shop] was . . . denied . . . [although] the defendants could not and did not undertake at the trial to support their denials. Includable in the same category are defendants' contention, twice pleaded after the decision in Katzenbach v. McClung, 379 U. S. 294, . . . that the Act was unconstitu-

include reasonable counsel fees as part of the costs to be assessed against the respondents. As so modified, the judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

---

tional on the very grounds foreclosed by *McClung;* and defendants' contention that the Act was invalid because it 'contravenes the will of God' and constitutes an interference with the 'free exercise of the Defendant's religion.' " 377 F. 2d 433, 437–438 (separate opinion of Judge Winter).