**FAZZIO REAL ESTATE CO., Inc., et al.,**
Appellants,

v.

**Samuel ADAMS, Appellee.**

No. 24825.

United States Court of Appeals
Fifth Circuit.

May 24, 1968.

---

Val A. Schaff, III, Schaff, Currier & Mouledoux, New Orleans, La., for appellants.

Alvin J. Bronstein, Jackson, Miss., Richard B. Sobol, New Orleans, La., John O. Fox, Washington, D. C., Collins, Douglas & Elie, New Orleans, La., for appellee.

Before COLEMAN and CLAYTON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

Pursuant to the provisions of Title II of the Civil Rights Act of 1964, Samuel Adams, a Negro, brought a class action to desegregate the facilities of Fazzio's Bridge Bowl.[1] Following a full hearing, the court below found Fazzio's to be a covered establishment within the meaning of Title II of the Civil Rights Act of 1964 and enjoined the various appellants from withholding from or denying Samuel Adams and the class he represents full enjoyment on a racially nondiscriminatory basis of the facilities of Fazzio's. Fazzio's appeals from this judgment.

Fazzio's is located in New Orleans, Louisiana, adjacent to U. S. Highway 90, directly across that highway from the Algiers Fischer Project, a federal low-rent housing project. The building is clearly visible to anyone traveling on U. S. Highway 90. However, it is separated from that highway by a chain link fence and is not readily accessible to travelers on U. S. Highway 90. The building in which Fazzio's operates contains approximately 30,000 square feet of floor space. Of this amount, approximately 18,600 square feet is devoted to the operation of the bowling lanes. In addition, some 9,500 square feet of floor space is devoted to equipment counters and the retail sale of bowling supplies necessary to the operation of the bowling lanes. An area of approximately 1,200 square feet of the building is used for a refreshment counter.

The refreshment counter area is approximately 37 feet long by 13 feet wide and has stools sufficient to seat 15 people. The principal items sold at the refreshment counter are beer, soft drinks, sandwiches, coffee, and similar items. This counter is located directly behind the bowlers' end of the bowling lanes and is no way separated from those lanes. Fazzio's invites and encourages its bowling customers to make purchases from the refreshment counter and provides facilities in the bowling lane area where such purchases may be consumed. Substantially all, if not all, the purchases of foodstuffs from this refreshment counter are intended for consumption on, and are consumed on, the premises of Fazzio's. Receipts from sales made at the refreshment counter amount to approximately 23 percent of the gross receipts of Fazzio's.

On March 30, 1967, solely on the basis of their race, Fazzio's refused to allow Adams and a group of other Negroes who reside in the New Orleans area to bowl.

1. The appellants in this case are Fazzio Real Estate Co., Inc., Fazzio's Recreation Center, Inc., and Domenico E. Fazzio, who jointly own and operate Fazzio's Bridge Bowl.

The pertinent parts of the Civil Rights Act of 1964 involved in this appeal are found in § 201 of the Act, 42 U.S.C. § 2000a. Those portions are as follows:

(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

\* \* \* \* \* \*

(2) Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

\* \* \* \* \* \*

(4) any establishment (A) (i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

It is undisputed that the operations of Fazzio's affect commerce within the meaning of the Act.[2]

The court below found that the refreshment counter is a covered establishment on the basis that it is a "facility principally engaged in selling food for consumption on the premises" within the meaning of § 201(b) (2), 42 U.S.C. § 2000a(b) (2). It followed that the entire premises operated as Fazzio's Bridge Bowl constituted a covered establishment within the meaning of § 201 (b) (4).

The sole issue presented on this appeal is the proper definition and application of the term "establishment" as used in the phrase "establishment which serves the public" in § 201(b) of the Act. Fazzio's argues that, because of the unitary system of management and bookkeeping employed in the operation of the separate, closely identifiable retail and sales functions, its entire operation must be considered as the only "establishment" for purposes of the 1964 Civil Rights Act.[3] It argues that, since its operation as a bowling alley does not constitute a covered establishment, the presence of a refreshment counter is not alone sufficient to bring the entire operation within the provisions of Title II.[4] These arguments are without merit.

2. See 42 U.S.C. § 2000a-(c) (2). It is undisputed that a substantial portion of the various food products served at Fazzio's has moved in commerce.

3. Appellant Fazzio's relies on certain cases decided under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., for the definition of "establishment" that it urges here. Acme Car and Truck Rentals, Inc. v. Hooper, 331 F.2d 442 (5th Cir. 1964); Mitchell, Secretary of Labor v. T. F. Taylor Fertilizer Works, 233 F.2d 284 (5th Cir. 1965). Those cases deal with the retail exemption of § 13 of the Act, 29 U.S.C. § 213, which exempts from coverage the employees of certain "retail or service establishments." Those cases are inapposite to a proper construction of the unmodified, generic term "establishment" as used in Title II of the Civil Rights Act of 1964. There is an obvious difference in the purpose and scope of the two acts, as well as obvious differences in the language. The concept of a "single physical establishment" having "functional unity" in the business sense is clearly relevant to the retail exemption since one of the criteria for the determination of the exemption is recognition of the business operation as being retail in the industry involved. No such business custom standard is found in Title II.

4. See Miller v. Amusement Enterprises, Inc., 391 F.2d 86, 5th Cir. 1967, on rehearing *en banc* 394 F.2d 342 (5th Cir. 1968). This case was argued prior to the reversal on rehearing in *Miller*.

■ It is clear from a mere reading of § 201(b) that the term "establishment" was given very flexible usage in the Act. The Act contemplates that the term "establishment" refer to any separately identifiable business operation without regard to whether that operation is carried on in conjunction with other service or retail sales operations and without regard to questions concerning ownership, management or control of such operations. For instance, § 201 (b) (4) (B) extends coverage to "any establishment * * * which holds itself out as serving patrons of such covered establishment." It is clear that the Act, for purposes of coverage, contemplates that there may be an "establishment" within an "establishment."

■ The only way in which this is conceptually possible is for the Act to extend coverage to all major and minor aspects of any business enterprises which serve separately identifiable functions. For instance, hotels are clearly covered under § 201(b) (1). Because of this coverage of a major portion of that business operation, a barber shop within such a covered hotel also becomes a covered "establishment." By the same reasoning, if it be found—as it was in this case—that a covered establishment exists within the structure of a unified business operation, then under the provisions of § 201(b) (4) of the Act the entire business operation located at those premises becomes a "covered establishment." The Act draws no distinction with regard to the principal purpose for which a business enterprise is carried on.

Had a substantial business purpose test been intended, as urged by Fazzio's, it would have been a very simple matter to include it in the Act. No such test was included with respect to the question of when the presence of one covered "establishment" in a business enterprise will result in the entire operation's being treated as one establishment for the pur-

pose of coverage under § 201 (b) (4). In fact, the face of the Act specifically rebuts the existence of any substantial business purpose or "functional unity" limitation on the meaning of the term "establishment" as used throughout § 201. Under § 201(b) (4) (A) coverage may extend to both establishments within covered establishments and to establishments "within the premises of which is physically located any such covered establishment."

■ Appellants raise two other points; both revolve around the use of the word "principally" as used in the phrase "facility principally engaged in selling food for consumption on the premises" in § 201(b) (2).[5] See Newman v. Piggie Park Enterprises, 377 F.2d 433, 435–436 (4th Cir. 1967), aff'd on other grounds 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). They first argue that Fazzio's cannot be a covered establishment since the sale of foodstuffs is only incidental to the operation of the bowling alley and Fazzio's is thus not "principally" engaged in selling food. This argument is inapposite. Fazzio's Bridge Bowl as an entity is not covered because it is principally engaged in selling food for consumption on the premises under § 201(b) (2). Rather, Fazzio's is covered (1) because the refreshment counter is a covered establishment principally engaged in selling food for consumption on the premises within the meaning of § 201(b) (2), and (2) because the covered refreshment counter is physically located within the premises of Fazzio's bowling operation [§ 201(b) (4) (A) (ii)] and the two stand ready to and do serve each other's patrons. [§ 201(b) (4) (B).]

■■ Fazzio's also argues that the refreshment counter is not covered under § 201(b) (2) as an establishment "principally" engaged in the sale of foodstuffs since approximately one-half of its sales are of beer.[6] See Cuevas v. Sdrales, 344

5. Under § 201(b) (2), coverage extends to "any restaurant, cafeteria, luncheon, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises."

6. See Tyson v. Cazes, 238 F.Supp. 937 (E.D.La.1965), rev'd on other grounds, 363 F.2d 742 (5th Cir. 1966).

F.2d 1019, 1023 (10th Cir. 1965), cert. denied 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 528 (1966), holding that " 'a bar or tavern which serves little or no food is not covered.' " This argument is also without merit. It appears settled that bars, *per se,* are not covered by the Act[7], but that is not to say that where beer is served in conjunction with foodstuffs beer is not to be treated as food. The refreshment counter at Fazzio's was clearly engaged in the sale of food rather than drink. Second, even if beer were excluded, sales from the refreshment counter would still constitute from eight to eleven percent of the gross revenue of Fazzio's. It is clear that these sales are not *de minimus*, that the operation of the refreshment counter is not an insignificant adjunct of the operation of the bowling alley, and that the refreshment counter itself is an establishment within the meaning of the Act. The refreshment counter is principally engaged in the sale of food for consumption on the premises and is therefore covered under § 201(b) (2). See Evans v. Laurel Links, 261 F.Supp. 474 (E.D.Va.1966). Compare Kyles v. Paul, 263 F.Supp. 412 (E.D.Ark.1967). Furthermore, the composite legislative history of the Civil Rights Act of 1964 reflects that "the general intent and overriding purpose of the act was to end discrimination in certain facilities open to the general public." The Act must be read "with open minds attuned to the clear and strong purpose * * *, namely, to secure for all citizens the full enjoyment of facilities described in the Act which are open to the general public." [8]

We do no more, today, than abide by this spirit embodied in law. We do no injustice to the language employed to reduce this spirit to writing. In fact, to do otherwise would be an injustice, and would be to pay homage to that same inequality which the laws of our land, the Congress in enacting them, the courts in interpreting them, and the executive branch in its enforcement efforts have strived to eradicate.[9]

Affirmed.

---

7. Bars may, however, be covered under some circumstances. See Cuevas, supra, nn. 2 and 3.

8. Miller v. Amusement Enterprises, Inc., supra, n. 4, on rehearing *en banc,* 394 F. 2d 342, at 349 (5th Cir. 1968).

9. Id. at 353.