**UNITED STATES of America,
Plaintiff,**

v.

**Doy E. BOYD and Carl P. Boyd d/b/a
Vandy's Bar-B-Q et al., Defendants.**

**Civ. A. No. 474.**

United States District Court,
S. D. Georgia,
Swainsboro Division.

April 16, 1970.

Supplemental Opinion Jan. 4, 1971.

Supplemental Decree May 24, 1971.

Barry H. Weinberg, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Cohen Anderson of Anderson & Sanders, Statesboro, Ga., for defendants.

Charles H. Brown of Allen, Edenfield, Brown & Franklin, Statesboro, Ga., for Homer Morgan Parrish, Chief of Police.

FINDINGS OF FACT
CONCLUSIONS OF LAW
DECREE

LAWRENCE, Chief Judge.

At the conclusion of the hearing in this case I dictated into the record findings of fact, reserving for later determination the issue as to whether a substantial portion of the food ingredients served at the defendants' restaurant moved in interstate commerce. Only one area of the law presented any problem to me at the time. Under 42 U.S.C. § 2000a(b) (2) public accommodations include "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility *principally engaged in selling food for consumption on the premises*." The question arose at the hearing whether the words italicized modify "any restaurant," etc. or whether they merely define "other facility." This issue was settled in Newman v. Piggie Park Enterprises, Inc., 377 F. 2d 433, 435–436.

Since the hearing, briefs have been filed.[1] Plaintiff has also submitted proposed findings of fact and conclusions of law. I have adopted most of the latter and many of the findings.

FINDINGS OF FACT

1. This action was commenced on December 27, 1968 by the United States pursuant to 42 U.S.C. 2000a.

2. The defendants Doy E. Boyd and Carl P. Boyd are the owners and operators of Vandy's Bar-B-Q restaurant, an establishment solely engaged in selling and serving food fit for consumption on the premises, located at the corner of West Vine and South Walnut Streets in Statesboro, Georgia. The restaurant is one block from South Main Street, which is designated as United States Highways 301 and 25, and is the principal north-south road through the City of Statesboro, Georgia. A large parking lot is located directly across the street from the front of the restaurant, and the Statesboro municipal parking lot is located on Walnut Street, one-half block from the restaurant's side entrance.

3. Until 1967, the defendants maintained a sign on the front of the restaurant, visible from Highway 301, which bore the name of the restaurant and an advertisement for Coca-Cola. In July of 1967 the defendants were contacted by federal investigators inquiring into the defendants' racial policies. On July 31, 1967, after consultation with his attorney, the defendant Doy E. Boyd removed the sign. A similar sign is presently affixed flush over the front entrance.

4. From the time Vandy's Bar-B-Q was established at its present location in 1953 until the present, the defendant owners have maintained separate rooms for serving their white and Negro customers. White customers may be served in either room, although customarily they use only the front room which seats 45 persons. Negro customers will be served only in the back room which seats 12 persons. One exception to this policy occurred when a Negro man was served in the front room, but charged $1.00 for a soft drink. The defendant Doy Boyd has testified this was done "to discourage him." The rooms are separated by a wall. On the front side of the wall is the food preparation area, and beyond that, the white dining area (the food is cooked in a pit-area behind the restaurant). Food is served to Negroes in the back room through a pass-through, or window, in the wall.

5. Customers are unable to enter one room directly from the other; entrances to the white and Negro rooms are located respectively at the front (Vine Street) and side (Walnut Street) of the restaurant. Employees may pass between the rooms via a narrow passage, a work area used for washing, dining and food preparation implements, which also leads to the restaurant's storage area. In 1968, the restaurant was destroyed by fire, and thereafter enlarged and rebuilt

---

1. The defendants (Vandy's Bar-B-Q) in their brief appear to concede that they are a public accommodation and are covered by 42 U.S.C. § 2000a.

in its present form, retaining the separate dining rooms.

6. Negro witnesses have testified that when they sought service in the front dining area they were told that service would not be provided to them in the front room, and that they would be served only if they went around to the Negro dining room. Negroes were treated in this manner whether they sought seated or carry-out service. The defendant Doy Boyd has admitted to maintaining racially separate dining rooms, and telling Negroes who entered the front that they would be served only in the back.

7. In answers to interrogatories the defendants have stated they have no policy of knowingly refusing service to interstate travelers, and that the defendants have never communicated to the general public an unwillingness to serve interstate travelers. Interstate travelers are not served on a different basis than other customers, no signs are posted on the restaurant stating interstate travelers are not served, no known interstate traveler has ever been refused service, and no inquiry has ever been made as to whether customers are interstate travelers. All persons who request service are served, with the sole exception of Negro customers who desire to be served in the white dining area. One such Negro customer was an interstate traveler, a resident of California visiting a friend in Statesboro, who wanted to taste a sample of the bar-b-q. He and his friend were told they must go around to the back room to receive service, but they chose not to order rather than be served in the Negro room.

8. In November, 1968, a group of eight or nine Negroes decided to seek to be served in the white portion of the restaurant. They entered, took seats and asked to be served. The evidence indicates that a few colored teenagers gathered across the street to watch. Carl Boyd refused to serve them and informed the Negroes that they would have to go around to the other room. The group refused to leave. The situation seems to have become somewhat tense. Boyd called the police. Lieutenant Howell and a patrolman shortly arrived. The former talked to Mr. Patrick Jones, President of the local N.A.A.C.P. Chapter. He requested them to leave several times, stating that "the man" doesn't want you here. Jones replied: "Am I breaking the law?" Finally, the Lieutenant ordered the Negroes to leave, "I'm telling you to leave." They did so peacefully. There was at no time any physical disturbance or violence on the part of the citizens who sought to be served at the defendants' restaurant. There was uncontradicted evidence that there is no pattern whatever of police enforcement of segregation in any shape or form in Statesboro, unless the occurrence in November, 1968, amounted to same. The Chief and the Lieutenant of the police force contended that they acted only to preserve law and order.

9. The defendants' policy of requiring Negro patrons to use a separate dining area is well known in the City of Statesboro. Through the defendants' enforced racial segregation, continued since 1953, the two dining rooms at Vandy's Bar-B-Q restaurant have become inalterably known by their racial classification; the terms "front room" and "back room" by which the dining areas are known, are undisguised euphemisms for "white room" and "Negro room." Food suppliers of the defendants, two white agents of the Federal Bureau of Investigation, two white Statesboro policemen and four Negro witnesses all testified that Vandy's Bar-B-Q is reputed throughout the City for maintaining racially segregated dining areas. One Negro witness, who testified he still patronizes the restaurant and therefore regularly frequents the back dining room, said he is afraid to go into the front dining area, and that he would feel uncomfortable there. Given the history of enforced usage of these two rooms, the defendants' racially discriminatory policies will be continued if all customers are offered these rooms as alternative eating facilities.

10. Evidence of the dollar amount and origin of food supplied to the restaurant has centered upon a five month period, September, 1968 through January, 1969. Three food suppliers who serviced the defendants during that period, but had no records of those sales, testified to their average weekly or monthly sales to the defendants.

| Name of Supplier | Dollar Amount Purchased by the Defendants | Dollar Amount of Portion Which Traveled in Interstate Commerce | Dollar Amount of Portion Which Originated in the State of Georgia |
|---|---|---|---|
| Claussen's Bakery | $30.00 per week yearly average | $30.00 per week yearly average | All products are prepared in Charleston, South Carolina |
| Derst Bakery | $40.00 to $45.00 per week yearly average | $40.00 to $45.00 per week yearly average | All products made from ingredients which have traveled in interstate commerce; flour from Kansas, yeast from New Jersey, shortening from Tennessee |
| Robson's Home Bakery | $504.00 | $504.00 | Eash product itself, or its ingredients, traveled in interstate commerce |
| Claxton Wholesale Grocery and Supply, Inc. | $2069.92 | $1854.97 | $214.95 |
| Green Grocery Company | $1,188.86 | $1,080.66 | $108.20 |
| Pepsi-Cola Company | $35.00 per month yearly average | $35.00 per month yearly average | The soft drink concentrate comes from Kentucky |
| Coca-Cola Company | $273.00 | $273.00 | Some ingredients traveled in interstate commerce |
| Sunnyland Packing Company | $1,778.76 | The parties have stipulated that this company buys 70 percent of the processed chickens sold by Sunnyland Poultry Company, a Georgia corporation, which purchases 25 percent of the live chickens it processes from Alabama | |
| Robbins Packing Company | $3658.00 | All meat comes from pigs raised in Georgia | $3,658.00 |
| Chandler Company | $58.43 | The Court takes judicial notice that some of the goods supplied probably originated from without the State of Georgia | |
| City Dairy | $53.70 | Milk comes from cows located in Georgia. The defendant Doy Boyd has testified to personal knowledge that at least some of these cows were born in the State of Georgia, but he does not know if all the cows are Georgia-born | |

---◆---

11. One-third of the defendants' business involves food sold and eaten inside the restaurant. The rest of the defendants' business mainly involves food sold at the restaurant to customers who do not sit in the restaurant to eat, and a small amount of catering business. All the food sold at the restaurant, whether eaten there or not, is fit for consumption on the premises.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under 42 U.S.C. 2000a–6 and under 28 U.S.C. 1345.

2. The defendants Doy E. Boyd and Carl P. Boyd have, since 1953, followed a pattern and practice of discriminating against Negro customers of Vandy's Bar-B-Q on the basis of their race or color, by maintaining food service facilities which are segregated on the basis of race.

3. Vandy's Bar-B-Q is a restaurant, and therefore, is an establishment within the plain meaning of 42 U.S.C. 2000a(b) (2). Newman v. Piggie Park Enterprises, Inc., 377 F.2d 433, 436 (4th Cir. 1967), aff'd as modified, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

4. Vandy's Bar-B-Q restaurant is a place of public accommodation within the meaning of 42 U.S.C. 2000a. It offers to serve interstate travelers within the meaning of 42 U.S.C. 2000a(c) (2). Gregory v. Meyer, 376 F.2d 509 (5th Cir. 1957); Fazzio Real Estate Co. v. Adams, 268 F.Supp. 630 (D.La.1967), aff'd 396 F.2d 146 (5th Cir. 1968); Wooten v. Moore, 400 F.2d 239 (4th Cir. 1968); United States v. All Star Triangle Bowl, Inc., 283 F. Supp. 300 (D.S.C.1968). A substantial portion of the food served at defendants' restaurant has moved in commerce within the meaning of 42 U.S.C. 2000a(c) (3). Daniel v. Paul, 395 U.S. 298, 89 S. Ct. 1697, 23 L.Ed.2d 318 (1968); Katzenbach v. McClung, 379 U.S. 294, 85 S. Ct. 377, 13 L.Ed.2d 290 (1964); Gregory v. Meyer, *supra*; United States v. Richberg, 398 F.2d 523 (5th Cir. 1968); Miller v. Amusement Enterprises, Inc., 394 F.2d 342 (5th Cir. 1968); Newman v. Piggie Park Enterprises, Inc., *supra*.

5. At the close of the hearing on March 27th I sustained the motion to dismiss as to Chief of Police Parrish and Lieutenant Howell, individually and as a class, finding that the actions of the latter in the isolated incident relied on by the Government did not amount to state enforcement of racial segregation under 42 U.S.C. 2000a(d) (2). In any event, it was not necessary for the United States to show state action in view of the fact that the restaurant is a public accommodation the operation of which affects interstate commerce.

6. The Civil Rights Act of 1964 requires that the defendants' racially discriminatory activities be enjoined, and places a burden upon the defendants to eliminate the effects of their past discrimination. United States v. Louisiana, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); United States v. Gramer, 418 F.2d 692 (5th Cir. 1969) and cases cited there in footnote 3; United States v. Beach Associates, Inc., 286 F.Supp. 801 (D.C.Md.1968); Green v. New Kent County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Pullum v. Greene, 396 F.2d 251 (5th Cir. 1968); Felder v. Harnett County Board of Education, 409 F.2d 1070 (4th Cir. 1969); United States v. Medical Society of South Carolina, 298 F.Supp. 145 (D.S.C.1969). In this case, where the defendants' past actions consist of enforcing racially segregated dining rooms over the last 17 years, and rebuilding their restaurant with mutually inaccessible racially segregated dining rooms four years after the passage of the Civil Rights Act of 1964, and where the purpose and enforced usage of the dual dining facilities is renown throughout the City of Statesboro, merely enjoining the defendants from enforcing their policy of segregation is not enough. Any relief ordered by this Court will be inadequate unless the defendants are also enjoined from maintaining racially separate facilities. Since the racial designations have become inexorably connected with the existing dual dining facilities at Vandy's Bar-B-Q, and continued operation of the two dining rooms as alternative eating facilities will, therefore, result in continued racial use, the defendants may not continue to offer the separate dining rooms to their customers as alternative eating facilities.

## DECREE

Upon consideration of the evidence presented at a hearing held March 27, 1970, and the pleadings and documents filed in this case,

It is hereby ordered, adjudged and decreed that the defendants Doy E. Boyd and Carl P. Boyd, their agents, employees, successors in interest, and all those in active concert or participation with them, are hereby enjoined from:

1. Maintaining separate eating or carry-out facilities for white and Negro persons at Vandy's Bar-B-Q.

2. Failing or refusing to serve Negro patrons in the front dining room at Vandy's Bar-B-Q now being used exclusively by white patrons, on the same basis and under the same conditions as white members of the general public.

3. Engaging in any act or practice which deprives, directly or indirectly, any citizen of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Vandy's Bar-B-Q.

It is further ordered and adjudged that this Court shall retain jurisdiction for the purpose of issuing any additional orders that may be necessary to enforce this decree. Retention of jurisdiction is particularly necessary in the light of the fact that continued use of the back room as part of the eating facilities may perpetuate the long existing pattern of segregation in the restaurant. Beyond the elimination of the dual restaurant I will not specifically direct how the business is to be operated. I am not a restauranteur. However, under the circumstances, it is strongly suggested to defendants that the back room of Vandy's Bar-B-Q shall henceforth be utilized (a) to accommodate only customers seeking carry-out service to the exclusion of customers seeking seated service, which shall be offered as the sole accommodation of the front room; (b) to accommodate customers seeking seated service only at such time as all tables and counter stools in the front room are occupied by customers; (c) such other usage of the back room as will contribute to a unitary, and not a dual, public accommodation.

The plaintiff is awarded its costs.

## ORDER ON PLAINTIFF'S MOTION FOR SUPPLEMENTAL RELIEF

On April 16, 1970, I entered an Order and made findings of fact and conclusions of law in this case. I held that Vandy's Bar-B-Q is a place of public accommodation and that its restaurant operations violated Title II of the Civil Rights Act of 1964. Defendants were enjoined from furnishing separate or alternative facilities to whites and blacks for eating and carrying out food. I "strongly suggested" in my Order that the rear or back room, which was used only by the Negro trade, be utilized solely for carry-out service for both races.

Vandy's Bar-B-Q continues to be racially segregated in that while the front dining room is now opened to Negroes few use it while the rear room is still an all-black facility. The evidence does not show that defendants have excluded or discouraged blacks from patronizing the front dining room. However, apparently as a matter of choice, Negroes continue to use the rear facility. What has happened is that, without direct compulsion by defendants, the black patrons of the restaurant have followed the segregative pattern which existed prior to my Order. In it I ruled:

"Since the racial designations have become inexorably connected with the existing dual dining facilities at Vandy's Bar-B-Q, and continued operation of the two dining rooms as alternative eating facilities will, therefore, result in continued racial use, the defendants may not continue to offer the separate dining rooms to their customers as alternative eating facilities."

The defendants have ignored this direction by the Court and on October 27th an evidentiary hearing was held in connection with plaintiff's motion to have them cited for contempt.

It appears that on June 11, 12 and 13 and July 16, 17 and 18, 1970, between

the hours of 11 A.M. and 2 P.M., Agents of the Federal Bureau of Investigation made head counts of patrons entering the front and the side entrances of the restaurant. On June 11th 140 Negroes and no whites entered the side door and on the same day 157 whites and no blacks used the front entrance. The observations for the other five days showed the identical pattern, On the six days in question a total of 866 whites and no blacks used the front entrance while 267 Negroes and no whites entered the rear.[1] There was testimony from a colored man that he had used the front dining area on two occasions. Another Negro witness said that he had been served in front and that on three occasions he brought his family there. There was no intimidation. A third witness testified to the same effect concerning his use of the white section of the restaurant.

Mr. Boyd testified that he had not refused to serve anyone in the front since the Court's order and that Negroes go where they like. He said that some whites have used the rear where the same type of service is offered as in front.

In United States of America v. Gramer, 5 Cir., 418 F.2d 692 the facts were similar to those here. The Tall Pine Inn Restaurant maintained separate dining areas for the races and refused to serve Negroes on the same basis as whites. They were sent to the back dining area while the whites used the main dining facility. The Government proposed a consent decree under which the Restaurant was ordered "to close a separate dining room used only by Negro patrons on a freedom-of-choice basis and to seat and serve *all patrons* in the main dining room, using the spare dining room only after the main dining room is filled, and to post signs in and on the exterior door of the Negro dining room to this effect."

The relief sought by plaintiff in this respect was denied by the District Judge who expressed the view that the law does not require specification of how a man uses his property if he is not violating the Civil Rights Act and is not discriminating. "I don't believe that the law would be so high handed as to tell a man whether he should use the front portion of his building before he uses the back portion," said the Court.

On appeal the Fifth Circuit reversed on the ground that as respects the additional relief sought by the Government a hearing should have been held and findings made as to the necessity thereof.[2] The Court agreed that neither in this Circuit nor in the Supreme Court was there any precedent that requires courts to specify how a man should use his property if not violating the law. However, it found justification for the order proposed by the Government in decisions of district courts requiring "sequential seating by closing one dining room." The Court pointed out that the Fifth Circuit Court had not hesitated to innovate by requiring positive steps to remove the vestiges of dual systems of schools.[3]

What we have in this case is a situation where patrons fail or refuse to commingle despite the lack of any bar to doing so other than custom. The main or front dining room is open to any Negro who desires to use it. They are served without discrimination. The rear room is as segregated as it was prior to my April Order. According to an F.B.I. Agent who talked to Doy Boyd outside the restaurant last July, he was told by the defendant that the rear dining room was operated for the benefit of Negroes who desired to use it.

1. Doy Boyd testified that on one of the days three Negroes were served in the front facility. The two rooms are not connected although one can go from one to another through a work area.

2. Since the restaurant was razed by the owner no further proceedings took place.

3. There was a dissenting opinion, in part, in which the minority Judge agreed with the lower Court as to the extent and nature of appropriate injunctive relief.

The present operation of Vandy's Bar-B-Q does not satisfy the requirements of 42 U.S.C. § 2000a as to equal use and enjoyment of public accommodations. This Court must take more positive steps and measures than it took last April.

The Government says that I should enter an order which provides in itself for total elimination of the effects of past discrimination. As a condition to purge of contempt, plaintiff recommends that I require that the back room will accommodate only customers seeking carry-out service and that the front room will accommodate only those seeking seated service.[4] This was suggested by me in the previous order but defendants saw fit to ignore it.

The Government says that to require one type of service in front and one in the other room is more practical than the additional "suggestion" made in my April 16th Order to the effect that no customers seeking seated service should be accommodated in the rear room until all stools and tables in the front are occupied. As plaintiff points out, defendants would have to determine when and whether the front room is full, then lock or unlock the side door, and when locking the rear room, be forced to serve persons who may be eating or awaiting carry-out service.

This, I agree, is a funny way to run a restaurant.

The Government recommends that I further require: (a) the posting of signs at the front and side doors of Vandy's informing the public of the new plan of operation and stating that all persons are welcome, regardless of race or color, and (b) the submission to the Court by defendants and service upon the plaintiff, once each month and for six months, a report of the number and race of all persons who have entered and have been served in each of the two rooms.

I will not adjudge defendants in contempt at this time although they have clearly violated that part of my Order which forbade them "to offer separate dining rooms to their customers as alternative eating facilities."

Counsel for the Government will submit a form of judgment in accordance herewith as to the use of the rear room for carry-out service only and the front dining area solely for the seated trade. The form of the notice to be posted at the entrances will be set out in the judgment. The effective date will be the second day following service thereof on defendants.

I will not require defendants to submit daily racial counts of patronage in the two facilities. However, defendants, through their counsel, will file within 30 days from such judgment a report as to compliance with this Order and the judgment entered pursuant thereto. The plaintiff has ample investigative facilities to determine whether there is compliance.

Costs will be assessed against defendants.

### DECREE

Upon consideration of the Order of this Court entered April 16, 1970; the evidence presented at a hearing held October 27, 1970; and the pleadings and documents filed in this case,

It is hereby ordered, adjudged and decreed that the defendants Doy E. Boyd and Carl P. Boyd, their agents, employees, successors in interest, and all those in active concert or participation with them, are hereby enjoined from any further violation of this Court's Order of April 16, 1970.

It is further ordered, adjudged and decreed that Vandy's Bar-B-Q henceforth will be operated so that the rear room will be used to accommodate only customers seeking carry-out service, regardless of race, to the exclusion of customers seeking seated service, which

---

4. The testimony at the first hearing was that about one-third of the customers consumed food on the premises.

shall be offered to all customers regardless of race or color as the sole accommodation of the front dining room. A sign shall be posted at the side customer entrance (Walnut Street), at eye level and in one and one half inch block letters, which reads, "WE SERVE ALL PERSONS REGARDLESS OF RACE OR COLOR. CARRY-OUT SERVICE ONLY. FOR SEATED SERVICE PLEASE USE FRONT DOOR." A sign shall be posted at the side entrance not currently used for customer service, at eye level and in one and one half inch block letters, which reads, "WE SERVE ALL PERSONS REGARDLESS OF RACE OR COLOR. PLEASE USE DOOR TO THE RIGHT FOR CARRY-OUT SERVICE, OR FRONT DOOR FOR SEATED SERVICE." A sign shall be posted at the front customer entrance (Vine Street) at eye level in one and one half inch block letters which reads, "WE SERVE ALL PERSONS REGARDLESS OF RACE OR COLOR. SEATED SERVICE ONLY. FOR CARRY-OUT SERVICE PLEASE USE SIDE DOOR."

It is further ordered, adjudged and decreed that in lieu of the manner of operation described in the preceding paragraph, and prior to the submission of the report required by this Decree, the defendants may complete all structural, physical and other changes to effectuate the method of operation proposed by the defendant Carl P. Boyd, and found acceptable by the plaintiff, subsequent to the Court's January 4, 1971 Order. Under this proposal, all customers will be served in one room, such room to be the entire interior of Vandy's Bar-B-Q, created by removing the wall which currently serves to divide the front and rear dining rooms. All food preparation and service facilities described in this Court's April 16, 1970, Findings of Fact as presently existing on the front side of the wall which separates the two dining rooms, shall be moved to the rear wall of the newly created room and all tables shall be placed in such a manner as to allow passageway along the front and side walls and in front of the food service area. Upon entering the restaurant, customers desiring carry-out service, regardless of race or color, will proceed along the wall to their left to the food service area where they will place their orders, receive their food, then proceed along the Walnut Street Wall and exit through the front door. Customers desiring seated service will be served at the tables regardless of race or color. Automobile drive-up service may be provided through a window in the rear of the building, such service to be dependent upon receipt of all necessary and lawful permits and clearances for such property use. A sign shall be posted upon each of the Walnut Street doors, at eye level and in one and one half inch block letters, which reads, "WE SERVE ALL PERSONS REGARDLESS OF RACE OR COLOR. ALL CUSTOMERS USE FRONT DOOR." A sign shall be posted upon the front door, at eye level and in one and one half inch block letters, which reads, "WE SERVE ALL PERSONS REGARDLESS OF RACE OR COLOR. PLEASE ENTER AND BE SEATED OR PROCEED TO YOUR LEFT TO THE SERVICE COUNTER FOR CARRY-OUT SERVICE. SIDE DOORS MAY NOT BE USED." The Walnut Street doors may be used for emergency fire exits only.

The defendants through their counsel shall file with this Court and serve upon the plaintiff, within 30 days from the effective date of this Decree, a report detailing their compliance with this Decree and specifically describing their method of operation of Vandy's Bar-B-Q. The report shall include a statement of the size, position and exact wording of all signs as required by this Decree and the dates each sign was posted.

The effective date of this Judgment and Decree shall be the second day following service thereof upon the defendants.

Costs will be assessed against the defendants.