**Mark P. NEIDER, Plaintiff,**

**v.**

**Joseph COMBLO, individually and in his capacity as a Police Officer of the Village of Mamaroneck, Barbara Comblo, individually and The Village of Mamaroneck, New York, Defendants.**

**No. 94 Civ. 6323 (WCC).**

United States District Court,
S.D. New York.

March 12, 1996.

Lovett & Gould, White Plains, NY (Jonathan Lovett, of counsel), for Plaintiff.

Francis J. Young, P.C., Hartsdale, NY (Joseph S. Malara, of counsel), for Defendant Barbara Comblo.

**WILLIAM C. CONNER, Senior District Judge.**

This case presently is before the court on defendant Barbara Comblo's motion for an attorney's fee pursuant to 42 U.S.C. §§ 1983, 1988. For the reasons discussed below, the motion is denied.

## BACKGROUND

Plaintiff Mark P. Neider ("Neider") brought this action under 42 U.S.C. § 1983, alleging that defendants Town of Harrison, Joseph Comblo (a police officer employed by the Village of Mamaroneck, New York), and Barbara Comblo (Joseph Comblo's sister-in-law) conspired to and did violate Neider's civil rights guaranteed by the Fourth Amendment of the United States Constitution. Plaintiff alleged that he was falsely arrested by Joseph Comblo and criminally prosecuted by the Town of Harrison without probable cause. Plaintiff further alleged that

Barbara conspired with Joseph and the Town of Harrison to violate his civil rights.

Neider, an officer employed by Harrison during times relevant in this case, was arrested and criminally prosecuted for public lewdness based on Barbara's complaint and testimony that she had seen him masturbating in a car in front of her house. Neider was found guilty, but his conviction was reversed on appeal upon a determination that the verdict was not supported by the evidence.

Neider then brought this action for damages under 42 U.S.C. § 1983 alleging that the Town of Harrison, Joseph Comblo, and Barbara Comblo conspired to violate his right to be free from arrest and prosecution without probable cause, as guaranteed by the Fourth Amendment. On November 21, 1995, after a jury trial, a verdict was returned for the defendants. Barbara Comblo, through her attorney, then submitted the instant application for an attorney's fee.

## DISCUSSION

■ A district court has discretion to allow a prevailing party in a section 1983 case a reasonable attorney's fee. 42 U.S.C. § 1988(b). A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1558, p. 1 (1976); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). A prevailing defendant, however, "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Id.*, at 429 n. 2, 103 S.Ct. at 1938 n. 2. Although we have discretion to award an attorney's fee under section 1988, we decline to make such an award in this case.

In its special verdict, the jury found that plaintiff had failed to establish by a preponderance of the evidence that defendants intentionally deprived him of his constitutional right to be free of unreasonable arrest and prosecution. But, as the jury was leaving

the courtroom after reporting its verdict, one juror asked to be permitted to make a statement on behalf of the jury. The Court permitted the statement to be made off the record. The statement, to which a number of other jurors nodded their concurrence, clearly indicated that the jury was not happy about the result but had been compelled to reach it only because the necessary intent had not been shown.

The evidence left the Court with the same uneasiness about the result. There is no question that the charge of public lewdness made against plaintiff by defendants, which was prominently reported in the local press, caused him excruciating public humiliation and loss of his job as a police officer in the Town of Harrison, and made it virtually impossible for him to secure a similar position elsewhere. Those consequences must be accepted by a person who is guilty of the crime with which plaintiff was charged. But plaintiff's conviction was reversed by the Appellate Division for insufficient evidence, and additional evidence adduced in the trial of this civil rights action cast even more doubt on his guilt.

Defendant Barbara Comblo testified that, as she sat on the front stoop of her house in Mamaroneck with her four-year-old son, she saw a man masturbating as he sat in a blue car at the curb in front of the house. She said that after watching for a few seconds she stood up and, as she did, the car drove away rapidly and she noted that there was a napkin partially covering its rear license plate. Her brother-in-law, Joseph, an off-duty Mamaroneck police officer, was in the driveway of her house, loading a lawn mower into his pick-up truck. She called to him, "That guy was jerking off! Go get him!" She added that the man was in a blue car which had turned right at the end of the block.

Joseph jumped into his truck and followed in the direction the car had gone, but the car was already out of sight. He testified that after he had turned right and reached the next corner, he looked down the street to his left where he saw a blue car stop momentarily then start up again. But, instead of turning left into that street to follow the car, he drove straight ahead to go in the opposite direction around the block, assuming that the car would turn right at the next corner and planning to catch it at the diametrically opposite corner of the block. When he reached that corner, a blue car was stopped there for a stoplight and he pulled his truck in front of it, cutting off its path. Joseph walked around to the rear of the car to check its license plate. There was no napkin on it. When the driver of the car identified himself as Mark Neider, a Town of Harrison police officer, Joseph released him.

After Barbara indicated that she wanted to press criminal charges against the man, she went to the Mamaroneck police station with Joseph and filled out a complaint form. In it she described the man only as having black hair; she did not say that he had a mustache. Plaintiff's most prominent facial feature is a mustache.

Mamaroneck police officers obtained a photograph of plaintiff from the Town of Harrison police department and included it in a spread of six photographs of men, all having mustaches. They showed the photo spread to Joseph first, although there was no legitimate reason to do so, since there was no doubt that plaintiff was the man whose car Joseph had stopped and who had correctly identified himself. A short time later, the spread was shown to Barbara, and she picked out plaintiff's photograph as that of the man she had seen. Although both Barbara and Joseph deny that he told her which of the photographs was plaintiff's, the fact that the spread was unnecessarily shown to Joseph first casts serious doubt on the validity of her identification.

Plaintiff's car at the time of the incident was a two-tone car with light blue sides and trunk and dark blue roof and hood, not a monotone blue car as suggested by Barbara's description of it. At plaintiff's criminal trial, when Barbara was shown a photograph of plaintiff's car, she promptly volunteered, "That's not the car." The prosecutor, apparently thinking that a trick was being played on the witness, brusquely protested, stating incorrectly that it was not a photograph of plaintiff's car, and the matter was inexplicably dropped. But Barbara had eliminated

the principal means, perhaps the only means, of identifying the man she saw in front of her house.

Barbara testified that through the car's passenger-side window she got a full-length view of the man seated in the driver's seat, including a good look at his face. That testimony is highly dubious. The front stoop of Barbara's house is a considerable distance above the level of the street and, even when she was in a sitting position on the stoop, her eye level was at least five feet above the top of the passenger-side window of a car sitting at the curb. Looking down from that angle, it is highly doubtful that Barbara could see any part of the face of a man sitting in the driver's seat of the car. The windows of plaintiff's car were tinted, making it even more difficult to see the features of someone inside. Barbara's line of vision would doubtless have permitted her to see the man's lap. She testified that the man was masturbating with his right hand. Plaintiff is left-handed.

Some of Joseph's testimony seemed utterly incredible. Barbara testified that an Hispanic man who worked for Joseph was helping him load his truck in her driveway and that when she called to Joseph and urged him to "go get" the offender, the Hispanic man got in the cab of the truck with Joseph and drove off with him. Joseph testified that he did not know who the man in the driveway was, had never seen him before or since, and was never aware that the man entered the truck and sat down next to him. It is impossible for the Court to believe that Joseph would not notice a strange man sitting at his right and presumably partially blocking his view when he looked along the street into which he was making a right turn. The Court can imagine no reason for such apparently preposterous testimony other than the possibility that Joseph was trying to conceal the fact that he had an employee in the gardening and landscaping business he ran on the side, perhaps because the man was an illegal alien or because his social security taxes were not paid. In any event, this testimony reflects unfavorably on Joseph's credibility.

The evidence thus left the Court, as it apparently did the jury, with a disturbing feeling that plaintiff may not have been the man whom Barbara saw in front of her house. The Court, like the jury, does not believe that Barbara and Joseph knew from the outset that they had the wrong man, and deliberately pressed false charges against him. Indeed, there is no apparent reason why they would want to do so. But when so many factors cast so much doubt on their identification of plaintiff as the offender, and when the damage inflicted upon a person falsely charged with such a loathsome offense would obviously be so enormous, as compared to the injury which society would suffer from leaving the offender uncaught, defendants should have carefully re-examined the basis for their identification to guard against the possibility that they had made a mistake. While mere negligence is not enough to subject defendants to liability under section 1983, the Court does not believe that a man who has suffered grievous injury, both economically and in public scorn and ostracism, as a result of a charge which may well have been mistaken, should be punished further by being forced to pay defendant's legal fee.

## CONCLUSION

For the foregoing reasons, defendant Barbara Comblo's application for an attorney's fee is denied.

SO ORDERED.