**PEOPLE OF the STATE OF NEW YORK et al., Plaintiffs,**

v.

**11 CORNWELL COMPANY et al., Defendants.**

No. CV 80–2139.

United States District Court, E. D. New York.

Feb. 18, 1981.

274

Peter Bienstock, New York City, for plaintiffs.

Robert G. Morvillo, Obermaier, Morvillo & Abramowitz, P. C., New York City, for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

Defendant 11 Cornwell Company moves under FRCP 12(b)(1) & 12(b)(6) to dismiss the state's complaint on two grounds: (1) for failure to state a valid claim under 42 U.S.C. § 1985(3); and (2) because the state lacks standing to assert a claim under 42 U.S.C. § 1985(3) even if the court determines that one exists. For reasons set forth below, this court concludes that the complaint does state a cause of action under 42 U.S.C. § 1985(3) and that the state has standing to assert the claim.

## FACTS

Plaintiff, the State of New York, brings this action in its *parens patriae* capacity on behalf of its mentally disabled citizens and all other citizens generally. Defendants are residents of Rockville Centre, New York, who have banded together to form the 11 Cornwell Company, and defendant Samuels is the former owner of the property located at 11 Cornwell Street in Rockville Centre.

The complaint alleges that the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD), acting pursuant to state law, negotiated a sale for defendant Samuels' house at 11 Cornwell Street. Upon learning that a sale to OMRDD was imminent, and that the house would be used as a community residence for the mentally retarded, defendants formed a partnership known as the 11 Cornwell Company and purchased the house from defendant Samuels. The complaint alleges that Samuels sold the property to 11 Cornwell Company for a lesser amount than OMRDD had offered to pay, and that the sale took place to prevent the home from being used as a residence for the mentally retarded. It further alleges that 11 Cornwell Company seeks to resell the property, but has refused to negotiate with OMRDD for the sale. Complaint ¶ 11–15.

The state asserts that these allegations, if proved, show that defendants conspired (1) to deny New York State's mentally disabled citizens equal protection of the laws; and (2) to prevent and hinder the state authorities from providing its mentally disabled citizens with equal protection of the laws, both in violation of 42 U.S.C. § 1985(3). Complaint ¶ 16. In addition, the state alleges that defendants' actions violate New York State Executive Law § 296(5)(a), which guarantees mentally disabled persons equal access to housing accommodations in New York State. Complaint ¶ 17, 19. The validity of this pendent state law claim is not now before the court.

## REQUISITES FOR A CAUSE OF ACTION UNDER § 1985(3)

■ As outlined above, the state alleges two distinct causes of action under

§ 1985(3). Since the underlying problem on this motion is whether there is federal jurisdiction and the court concludes that the complaint does state a cause of action under the "preventing or hindering" clause of § 1985, thereby providing federal jurisdiction under 28 U.S.C. § 1343, the court need not at this time address the state's first contention, that the complaint also sets forth a cause of action that defendants conspired to deprive mentally deprived persons of equal protection of the laws.

The relevant portion of § 1985(3) provides that

If two or more persons in any State or Territory conspire * * * for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws * * * the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Here the complaint alleges that defendants conspired to prevent the state from securing equal protection for its mentally retarded citizens. The state contends that defendants prevented the OMRDD from purchasing the Samuels' home in order to keep mentally retarded persons from living in the house, and that defendants are intentionally discriminating against a class of persons by seeking to sell the house to someone other than the OMRDD.

Defendants argue that in order to invoke the preventing or hindering clause the state must show that defendants' actions prevented them from performing

a constitutional duty under the Equal Protection Clause of the Fourteenth Amendment to provide its mentally retarded citizens with community residential facilities. * * * [T]he state can only have such a *duty* if the persons upon whose behalf it is asserted, the potential residents of 11 Cornwell Street, have a constitutional *right* under the Equal Protection Clause to a community residential facility. Defendants' reply memorandum at 6.

In the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6001 *et seq.*, Congress includes a provision entitled "Congressional Findings Respecting Rights of Developmentally Disabled", which provides in pertinent part:

(1) Persons with developmental disabilities have a *right* to appropriate treatment, services, and habilitation for such disabilities.

(2) The treatment, services, and habilitation for a person with developmental disabilities should be designed to maximize the developmental potential of the person and should be provided in the setting that is least restrictive of the person's personal liberty. 42 U.S.C. § 6010 (emphasis added).

The state argues that the DDA thus imposes "an affirmative obligation to provide for the equal protection rights of the developmentally disabled." Plaintiffs' memorandum at 14. Defendant disputes the state's contention that the DDA is properly viewed as a codification of the equal protection rights of the mentally retarded.

The legislative history of the DDA reflects Congress' concern with the deinstitutionalization, where feasible, of previously confined persons and the necessity of focusing on alternatives to institutionalization:

Since the Committee is well aware that current theory with regard to the treatment and support of the developmentally disabled emphasizes that this treatment should be conducted in the individual's community without unnecessarily institutionalizing him, the Committee has chosen to include a specific requirement that state programs plan for as much deinstitutionalization as is feasible, and earmark moneys for this purpose. * * * It is anticipated that these requirements will prompt some movement of patients from State institutions back into their communities. H.R.Rep.No.94–58, 94th Cong., 1st Sess. 10, *Reprinted in [1975] U.S.Code Cong. & Ad.News* 919, 928.

In addition to the DDA and other statutes intended to alleviate the plight of mentally

disabled citizens, courts have become increasingly sensitive to problems arising from the unnecessary institutionalization of individuals suffering from only slight or non-existent mental disorders. *E. g., Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84 (CA3 1979) (en banc), *cert. granted,* 448 U.S. 905, 100 S.Ct. 3046, 65 L.Ed.2d 1135 (1980). *See also Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

The Supreme Court has taken an active role in ensuring that absent a constitutionally permissible justification, so-called mentally ill persons are not involuntarily confined in institutions. In *O'Connor v. Donaldson, supra,* the Court emphasized that

> A finding of "mental illness" alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement. * * * [T]here is * * * no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom. 422 U.S. at 575, 95 S.Ct. at 2493.

If the state cannot constitutionally confine a person simply because he or she may be mentally disabled, alternatives to institutionalization must be found. Seeking such alternatives is obviously an important state function: "That the State has a proper interest in providing care and assistance to the unfortunate goes without saying." *O'Connor v. Donaldson,* 422 U.S. at 575, 95 S.Ct. at 2493.

In this case the complaint alleges that the OMRDD sought to purchase the 11 Cornwell property in order "to acquire and manage residential property so that mentally disabled New York citizens may attain the benefits of normal residential surroundings." Complaint ¶ 16. While defendants argue that the state is not under a constitutional duty to seek community housing for its mentally retarded citizens, this argument flies in the face of the requirement imposed by *O'Connor* and subsequent cases

that the state provide alternatives to institutionalization. Community dissatisfaction and displeasure at the prospect of living in the same neighborhood with such persons does not excuse the state from securing for these individuals the freedom from the restrictions imposed by institutional life: "Mere public intolerance or animosity cannot justify the deprivation of a person's physical liberty." 422 U.S. at 575, 95 S.Ct. at 2493.

This court concludes that the state has set forth a cause of action under the preventing or hindering clause of § 1985(3). The complaint alleges a conspiracy to prevent the OMRDD from purchasing the property at 11 Cornwell Street for the purpose of keeping an "undesirable" class of persons from living there. The OMRDD's actions in attempting to buy the home, in light of the relevant case law and statutes, can fairly be characterized as an attempt to give or secure to mentally retarded citizens of New York State equal protection of the laws within the meaning of § 1985(3), by providing them with living conditions that restrict their freedom as little as necessary. If defendants have prevented or hindered the state from buying the home for the reasons alleged by plaintiff, they have therefore violated § 1985(3) and plaintiff is entitled to relief appropriate to the circumstances, including compensatory and punitive damages, for the harm suffered.

■ Since the court has jurisdiction over the state's § 1985 claim, the court will exercise pendent jurisdiction over plaintiff's pendent claim under New York Executive Law § 296(5)(a). Both causes of action arise out of a common nucleus of operative facts, and it is the court's present intention to consolidate the claims for pretrial and trial purposes.

### THE STATE'S STANDING TO ASSERT THE § 1985 CLAIM

■ Defendant also claims that the state does not have standing to assert the § 1985 claim alleged in the complaint. The state answers this argument by asserting it has jurisdiction in both its proprietary and

parens patriae capacities. Without discussing all of the arguments raised by both sides, the court agrees with the state's view that "representation of mentally disabled persons is the paradigm case for *parens patriae* standing." Plaintiffs' memorandum at 30. *See, e. g., Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257, 92 S.Ct. 885, 888, 31 L.Ed.2d 184 (1972) (discussing modern expansion of *parens patriae* concept from common law origin of King "as guardian of persons under legal disabilities to act for themselves"). *See generally O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). The Supreme Court recently reaffirmed the state's *parens patriae* interest in this area: "The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves." *Addington v. Texas*, 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). The court concludes, therefore, that the state has standing to bring this suit on behalf of its mentally retarded citizens.

## CONCLUSION

Defendants' motion to dismiss the complaint for lack of jurisdiction and for lack of standing to sue is denied. Defendants are directed to file an answer to the complaint within 20 days of receipt of this court's memorandum and order.

The parties are also directed to appear before the court on March 19, 1981 at 9:00 a. m. for a status conference to discuss the future course of this litigation.

SO ORDERED.