The PEOPLE OF the STATE OF NEW YORK, By Robert ABRAMS, Attorney General of the State of New York, on behalf of New York's mentally disabled citizens, Plaintiff-Cross-Appellant,

v.

11 CORNWELL COMPANY, a New York Partnership, Defendant-Cross-Appellee.

Nos. 1371, 1781, Dockets 82–7084, 82–7182.

United States Court of Appeals, Second Circuit.

Submitted to the *En Banc* Court April 25, 1983.

Decided Sept. 16, 1983.

Robert Abrams, Atty. Gen. of New York, Peter Bienstock, Deborah Bachrach, Jane Levine, Asst. Attys. Gen., New York City, submitted memoranda for plaintiff-cross-appellant.

Richard J. Pilson, Alan H. Young, and Lindenbaum & Young, Brooklyn, N.Y., submitted memoranda for defendant-cross-appellee.

Before FEINBERG, Chief Judge, LUMBARD, KAUFMAN, OAKES, VAN GRAAFEILAND, MESKILL, NEWMAN, KEARSE, CARDAMONE, PIERCE and WINTER, Circuit Judges.*

NEWMAN, Circuit Judge:

We granted rehearing *en banc* to consider the narrow but nonetheless important issue whether a state that prevails as a plaintiff in a lawsuit brought pursuant to a federal civil rights statute is eligible for an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (Supp. V 1981). The issue arises on a cross-appeal by the State of New York from that portion of a judgment of the District Court for the Eastern District of New York (Jacob Mishler, Judge), entered November 23, 1981, that denied the State an attorney's fee. For the reasons that follow, we hold that a state is eligible for attorney's fees under section 1988, and we remand for further proceedings to afford New York an opportunity to demonstrate the appropriateness of an attorney's fee in this case.

I.

The suit was brought by the State of New York, acting as *parens patriae,* on behalf of its mentally retarded citizens, against 11 Cornwell Company (11 Corn-

* Judge Lumbard, a member of the panel, has elected to serve on the en banc court pursuant to 28 U.S.C.A. § 46(c) (West Supp.1983). Judge Pratt has recused himself.

well), a partnership owning a residential property at 11 Cornwell Street in Rockville Centre, New York. The State alleged that the partnership had been formed and was acting to prevent the State's Office of Mental Retardation and Developmental Disabilities (OMRDD) from purchasing the property at 11 Cornwell Street for use as a community residence for retarded persons. The complaint alleged two federal causes of action under 42 U.S.C. § 1985(3) (Supp. V 1981): a conspiracy to prevent and hinder the State from providing mentally retarded persons with equal protection of the laws and a conspiracy to deny mentally retarded persons equal protection of the laws. The complaint also alleged discrimination on the basis of disability in the sale of housing, in violation of the New York Human Rights Law, N.Y.Exec.Law § 296(5)(a) (McKinney 1982). The District Court (George C. Pratt, Judge) denied 11 Cornwell's motion to dismiss for lack of federal jurisdiction and lack of standing. 508 F.Supp. 273 (E.D.N.Y. 1981). Judge Pratt found the federal claim substantial enough to support federal jurisdiction and the exercise of pendent jurisdiction over the state law claim.

After the State's damage claim was withdrawn, the matter was reassigned to Judge Mishler for a bench trial. Judge Mishler found that the partnership was formed to acquire the property so that it would not be sold to OMRDD. He also found that the partnership offered the property for sale to any purchaser who would occupy it as a single family unit and that prospective purchasers were told that the selling price of $122,500 was set below the market price in order to defeat New York's planned use of the property. Considering first the state law claim, *see Hagans v. Lavine,* 415 U.S. 528, 546–47, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577 (1974), Judge Mishler found the partnership in violation of the New York Human Rights Law and ordered it to convey the property to OMRDD for $122,500. This ruling obviated decision on the merits of the section 1985(3) claims.

Without waiting for a motion by New York, as the successful plaintiff, for an award of attorney's fees pursuant to section 1988, Judge Mishler noted that the State would be entitled to fees under section 1988 "if it were a private litigant," but, based on his view of the fee statute, he ruled that New York could not recover its attorney's fees.

A panel of this Court affirmed the judgment, unanimously upholding the injunctive remedy against the partnership and agreeing, by a divided vote, that an award of attorney's fees should not be allowed to the State. *New York v. 11 Cornwell Co.,* 695 F.2d 34 (2d Cir.1982). Writing for the Court on the cross-appeal, Judge Lumbard viewed Judge Mishler's denial of a fee award as an exercise of discretion, though he also noted that Judge Mishler had found that the purposes of section 1988 would not be served by awarding an attorney's fee, *id.* at 45. Judge Lumbard construed section 1988 to permit a fee award to a state-funded entity in "appropriate circumstances," but added that government attorneys "ordinarily" do not need the prospect of fee awards as an incentive to undertake civil rights litigation. *Id.* Judge Lumbard also observed that there was nothing in the record to suggest that the state Attorney General's decision to bring suit against 11 Cornwell had been in any way influenced by the possibility of recovering attorney's fees. *Id.* In dissent, Judge Oakes understood Judge Mishler to have denied a fee award, not as an exercise of discretion, but because of an interpretation of section 1988 precluding a fee award to a state. Judge Oakes would have remanded for determination of the amount of fees to be awarded. *Id.* at 44.

New York petitioned for a rehearing and suggested a rehearing *en banc* with respect to the denial of its cross-appeal, which had pursued the issue of attorney's fees. The State contended that it was eligible for a fee award under section 1988 and that Judge Mishler's *sua sponte* denial of an award had precluded the State from developing a record to demonstrate the appropriateness of a fee award in this case. The State strenuously objected to the panel majority's reliance on the inadequacy of a record, since there had been no opportunity to develop a record. Before the State filed its

petition for rehearing, Judge Moore, a member of the panel, died, and the remaining members of the panel were divided on the State's requested relief, a hearing in the District Court. In these circumstances, and in view of the potentially recurring nature and significance of the issue, we decided to rehear the cross-appeal *en banc.* We invited and have received supplemental memoranda from the parties.

## II.

Section 1988 provides that in any action to enforce civil rights statutes, including section 1985, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The specific exclusion of the United States indicates that all other prevailing parties are eligible for fee awards.[1] The Supreme Court, relying on the wording of the statute and the absence of any legislative history precluding fee awards to "state-funded entities," has affirmed an award of attorney's fees to public school districts that had prevailed in their suit against a state, *Washington v. Seattle School District No. 1,* 458 U.S. 457, 102 S.Ct. 3187, 3204 n. 31, 73 L.Ed.2d 896 (1982), a decision announced after Judge Mishler's ruling in this case. Though Congress, in enacting section 1988, contemplated primarily suits initiated by private citizens, *see* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5910, we see no reason not to apply the statute as written, especially since an award of attorney's fees to a state can frequently be expected to advance the congressional purpose of enforcing civil rights statutes. Like all members of the panel that initially considered this case, we hold that a state, prevailing as a plaintiff, is eligible for a fee award under section 1988. What requires further consideration are the criteria that ought to guide a district court's discretion in adjudicating fee applications by a state, and an assess-

ment of the District Court's ruling in this case in light of those criteria.

In enacting section 1988, Congress made clear its intention to adopt the standard applicable to the fee provisions of the Civil Rights Act of 1964, *e.g.,* 42 U.S.C. § 2000a–3(b) (1976), whereby a party successful in its effort to enforce rights protected by the Act " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S.Rep. No. 94–1011, *supra,* at 4, 1976 Code Cong. & Ad.News at 5912 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam)). We must consider whether the fact that a prevailing plaintiff is a state should alter what has become virtually a presumption in favor of an award of an attorney's fee. *See* E. Larson, *Federal Court Awards of Attorney's Fees* 33–83 (1981). Many factors weigh in favor of fee awards to a state. In approving an award to local school districts, the Supreme Court noted that they have limited budgets and that allowing them fees encourages compliance with and enforcement of civil rights laws. *Washington v. Seattle School District No. 1, supra,* 102 S.Ct. at 3204 n. 31. These same considerations will normally apply to states; their litigating budgets are limited, and they can assist in the enforcement of civil rights laws at least as effectively as units of local government. In fact, with compensatory damages not necessarily available simply because a constitutional right has been violated, *see Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), governmental entities, including states, may have increased opportunities to initiate litigation to vindicate the civil rights of individuals who lack sufficient incentive to sue.

Also supportive of an award of fees to a state under section 1988 is the state's role as *parens patriae* on behalf of a disadvantaged group of its citizens, as distinguished

---

1. The maxim *expressio unius est exclusio alterius* either applies directly, *see TVA v. Hill,* 437 U.S. 153, 188, 98 S.Ct. 2279, 2298, 57 L.Ed.2d 117 (1978) (stated exceptions to Endangered Species Act of 1973 imply that no others were intended), or may be adapted to state *exclusio* *unius est inclusio alterius, see MacDonald v. United States,* 139 F.Supp. 598, 600 (D.Mass. 1956) (exception to gift tax for transfer of foreign land by non-resident alien implies applicability of tax to transfer of foreign land by United States citizen).

from a state's suing to vindicate its own interests. The importance of the rights at issue and the nature of the relief sought are also relevant to the allowance of an award. The circumstances of the defendant may also be pertinent to a state's claim for attorney's fees. Deliberate conduct on a defendant's part to deny a plaintiff's rights or intransigence in the course of litigation may make a fee award especially appropriate, while economic hardship may weigh against a fee award or at least warrant restraint in setting the amount.

We recognize that each state bears some responsibility to aid in securing the rights of its citizens. This general obligation perhaps justifies some relaxation of the presumption in favor of fee awards when a state succeeds in vindicating civil rights. But there surely need be no antipathy toward such fee awards. The matter remains within the discretion of the district courts, which should give each claim full and fair consideration, mindful of the underlying Congressional purpose to have fee awards serve as an incentive for enforcement of civil rights statutes.

In this case, we cannot be entirely certain whether Judge Mishler thought that a state was never entitled to a fee award under section 1988 or that New York was not entitled to an award under the circumstances of this case. If he took the former view, he was in error. If he denied an award as a matter of discretion, reconsideration is warranted for two reasons. First, New York was entitled to an opportunity to demonstrate the appropriateness of a fee award in this case. Specifically, New York should have an opportunity to present facts con-

cerning the budget for its Attorney General's office and the demands upon that office so that the District Court can make an informed decision as to the significance a fee award may have toward encouraging the State to undertake civil rights litigation.[2] Second, Judge Mishler appears to have applied an incorrect standard in rejecting the idea that a fee award to a state can serve the enforcement purposes of section 1988. We believe such an award frequently will serve those purposes. Whether an award is appropriate in this particular case requires further consideration by the District Judge, in light of the pertinent factors we have identified and after the State has had an opportunity to make a record in support of its application.[3]

We therefore vacate those portions of the panel opinions concerning the cross-appeal, 695 F.2d at 44–45, and remand for further consideration of New York's fee application in accordance with this opinion.

LUMBARD, Circuit Judge, dissenting:

I dissent.

Under the circumstances of this case, I see no purpose in remanding to the district court for further findings regarding the entitlement of the State of New York to a fee award. Unlike a private citizen, who typically does not have even one lawyer on his payroll, the state needs no encouragement to litigate. Quite the contrary, the state needs to be discouraged from coming into the federal court when it could just as easily, and more properly, go into the local state court, in which similar relief is available under state and federal law. Rarely indeed do we hear of a statement or speech

---

**2.** Whether or not New York's decision to undertake this litigation was influenced by the prospect of a fee award, such an award would still be an entirely appropriate exercise of a district court's discretion if it would encourage future civil rights enforcement efforts that might otherwise not be undertaken.

**3.** We need have no concern that an award of an attorney's fee to New York in this case would provide an incentive for the State to litigate in the federal courts in preference to the courts of New York. The fee provision is part of the remedy whether the suit is brought in federal or state court, *Maine v. Thiboutot,* 448 U.S. 1,

11, 100 S.Ct. 2502, 2508, 65 L.Ed.2d 555 (1980), and the New York courts have shown no reluctance to entertain federal civil rights suits, *see Clark v. Bond Stores, Inc.,* 41 A.D.2d 620, 340 N.Y.S.2d 847 (1st Dep't 1973). Moreover, a fee award is appropriate where, as in this case, a plaintiff prevails on a pendent state claim arising from the same facts that underlie a substantial constitutional claim, *Holley v. Lavine,* 605 F.2d 638 (2d Cir.1979), *cert. denied sub nom. Russo v. Holley,* 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), and New York has recognized this principle, *Young v. Toia,* 66 A.D.2d 377, 413 N.Y.S.2d 530 (4th Dep't 1979).

by any federal judge, at any level, that fails to point out that the constant and accelerating increase in federal judicial business threatens the capacity of our judicial system to dispense justice in due time and with proper care and attention. To reward the state with a fee allowance for adding to our case load is completely inconsistent both with any sensible adjustment of the relationship between our federal and state judicial systems and with our frequently expressed theory that state business should be left to the states wherever possible.

If the state complains about the expense of conducting this litigation, and similar matters, surely the state legislature can provide in its courts the same type of fee allowance for *parens patriae* suits that Congress has granted in § 1988 to suitors in the federal courts. Any bar that may now exist to such reimbursement in the New York courts should not serve as an excuse for the state to come into federal court.

I would accordingly adhere to the panel opinion and affirm the decision of the district court.