Alfred KAPPENBERGER, Plaintiff,

v.

Daniel OATES, Jeffrey Hoerter,
William Morris and Robert
Macquire, Defendants.

No. 84 Civ. 6682 (IBC).

United States District Court,
S.D. New York.

July 1, 1987.

Jeffrey Bettan, Westbury, N.Y., for
plaintiff.

Frederick A.O. Schwarz, Jr., Corporation Counsel, New York City, for Municipal Defendants; John P. Woods, Jay M. Solomon, Asst. Corp. Counsel, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendants, police officers of the City of New York, move for an award of sanctions and attorneys fees pursuant to Federal Rule of Civil Procedure 11, 42 U.S.C. § 1988 (1982) and the common law prohibiting bad faith litigation. Plaintiff denies any responsibility whatsoever on either ground.

The instant motion for attorney's fees and expenses is granted in all respects.

## STATEMENT OF FACTS

Plaintiff Alfred Kappenberger commenced suit against the defendants on or about September 28, 1984, alleging a violation of his constitutional rights under 42 U.S.C. § 1983 (1982). He claimed he had been unjustly assaulted by defendants and as a result sustained serious personal injuries. The action was tried before this Court commencing March 24, 1986. At the completion of the eight day trial, the jury returned a verdict in favor of the defendants. Throughout the course of the trial, the plaintiff contradicted his prior sworn testimony at his deposition and the criminal trial stemming from this incident, held before Justice William Davis of the Criminal Court of the City of New York, commencing January 4, 1984. At the trial before us, his inconsistent statements continued from day to day. It should be noted that Kappenberger's recital of the facts at trial was completely at odds with the allegations set forth in his complaint. As a result of the plaintiff's fabrication of the events that transpired on the night in question, coupled with the baseless character of this lawsuit, defendants now request sanctions.

## DISCUSSION

42 U.S.C. § 1988 (1982) provides for an award of reasonable attorney's fees to a prevailing party in an action brought pursuant to 42 U.S.C. § 1983 (1982). The courts have been liberal in awarding attorney's fees under this statute, and are in accord that a successful plaintiff may normally receive attorneys fees. *Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 564 (E.D.N.Y.1986), *modified and remanded,* 821 F.2d 121 (2d Cir. 1987). The award of fees under § 1988 furthers the policy considerations behind the statute that "the [movant] is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." *Christianburg Garment Co. v. EEOC.,* 434 U.S. 412, 418, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978), *quoting Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

■ The award of attorney's fees to a successful defendant involves different considerations, each within the firm and unalterable determination of courts to discourage litigants from bringing frivolous cases, and "spare members of the public from the expense of defending against baseless allegations." *Nemeroff v. Abelson,* 704 F.2d 652, 654 (S.D.N.Y.1983).

The Court in its discretion may award attorney's fees under § 1988 "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC, supra,* 434 U.S. at 421, 98 S.Ct. at 700.

■ Defendants also move for attorneys fees and expenses under Fed.R.Civ.P. 11, which allows the court to assess fees to cover reasonable expenses incurred as a result of the filing of a frivolous pleading. *Eastway Construction Corp. v. City of New York, supra* at 570. If a claim is deemed frivolous for the purpose of awarding fees under § 1988, it is considered frivolous under Rule 11 as well. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986).

■ We experience no difficulty whatsoever in finding that plaintiff's entire claim was frivolous within the meaning of

§ 1988. After the jury returned a verdict for the defendants, we stated in open court, with jury and the parties present, that plaintiff had committed perjury under oath; that if the jury had not returned a verdict in favor of the defendants, we would have been compelled by law to set aside the verdict and direct a verdict for the defendants. [Tr. 6–8][1]

\* \* \* \* \* \*

The complaint contains numerous contradictions with plaintiff's courtroom testimony. For instance, his complaint alleges "the defendant, Daniel Oates, then took his nightstick, pushed it into plaintiff's mouth, thereby choking the plaintiff, and throwing him up against the wall in the vestibule of his apartment, causing him to lose his breath." (Plaintiff's complaint, Paragraph 14). At trial, he testified that Officer Oates pushed his nightstick against plaintiff's throat—not into his mouth. Not a word at trial or at any other time why this allegation appeared in the complaint and was then completely contradicted throughout the course of plaintiff's trial testimony.

Many other allegations in the complaint are at complete variance with plaintiff's trial testimony. In his complaint (paragraph 9) it was he who called the paramedics to assist his girlfriend, Nadia Agresta, on the night of the incident. However, when questioned on this point at trial, plaintiff testified that it was Ms. Agresta, not he, who contacted the paramedics. [Tr. 211–213]

We go further with a few illustrations of the many staggering inconsistencies between allegations in the complaint and plaintiff's sworn trial testimony. The complaint: "a short time thereafter Nadia Agresta packed her belongings, descended the stairs and went screaming out into Madison Avenue." (complaint, paragraph 10). At trial: he did not know whether Ms. Agresta had taken the stairs or the elevator out of the building and was not able to recall whether she was screaming as she descended the stairs. [Tr. 214–216]

Another inconsistency was that in his complaint the plaintiff alleged that "Officer *Hoerter* yelled at this time 'Let's kill this fat moose' " (complaint, paragraph 17) but at trial the plaintiff alleged that it was Officer *Oates* who had made the statement and was at a loss when confronted with the inconsistency between his complaint and his trial testimony. [Tr. 316–317] Moreover, as pointed out by the defendants, Kappenberger's trial testimony was replete with contradictions and inconsistencies. Plaintiff's sworn testimony at trial before us was impeached by testimony from his deposition and at the prior criminal proceeding—indeed, no less than 18 times.

We emphasize that similar abuses of truth prevail with frequency throughout the totality of plaintiff's sworn testimony at trial, deposition, and every other occasion where sworn statement was made. These contradictions most assuredly raise serious questions concerning the validity of the complaint. Plaintiff's testimony was totally contradicted by the defendants' testimony as well as testimony by neutral witnesses and clear-cut documentary evidence. The totality of the evidence introduced completely discredited the plaintiff's version of the event and strongly supported the defendants' recital of the incident. We make mention of plaintiff's testimony that the officers could not have possibly sustained injuries from the encounter. (Defendants' Reply Affidavit, pg. 5) Not only was this contradicted by the defendants but by impressive medical records which clearly demonstrated that defendants had in fact been seriously injured inflicted in a manner consistent with their testimony at trial.

We discredit plaintiff's reasoning that his acquittal of the criminal charges in any way substantiates the instant civil action; that he was somehow justified in bringing this civil suit. The fact that the jury in the criminal case did not find beyond a reasonable doubt that plaintiff was guilty of the charges in no way supports plaintiff's contention of innocence of any wrongdoing as alleged in this civil action. Nor does the

**1.** The letters "Tr." followed by a number indicates pages of the official trial transcript.

fact that plaintiff was injured lead to the conclusion that he had a legal grievance. As defendants point out in their Reply Affidavit, it was never denied, either at the plaintiff's criminal trial or the subsequent civil action tried before this Court that the defendant officers were required to use physical force to subdue the physically powerful plaintiff of enormous size.

We agree with the position of defendants that virtually all of the evidence (with the exception of plaintiff's testimony) convincingly demonstrated that plaintiff's claims were fabricated. Both this Court and jury had ample opportunity to assess the plaintiff's credibility and demeanor: both recognized him unworthy of belief. The disparity between the plaintiff's complaint and his testimony at trial, as well as the inconsistency between his testimony at the criminal trial together with his contradictions from day to day throughout the course of his testimony, lead us to the conclusion that the complaint was baseless and surely an appropriate case for the imposition of sanctions.

\* \* \* \* \* \*

Our determination of the amount of attorney's fees to be imposed in this case begins with a calculation of the number of hours reasonably expended in the defense of this action, multiplied by a reasonable hourly attorney's fee. (the lodestar). *Eastway Construction Corporation v. City of New York, supra* at 571.

The attorneys for the defendants have provided this Court with a breakdown of the hours spent in the defense of this lawsuit. Mr. Woods spent a total of 101.5 hours in the preparation and presentation of this action; Mr. Solomon 76.5 hours. Mr. Woods requests reimbursement at the rate of $150 an hour; Mr. Solomon at the rate of $140 an hour. We find these rates completely reasonable and well supported by affidavit covering their experience and the prevailing rates of professional services rendered in the community.

Defendants also request reimbursement of expenses in the sum of $3,434.95. This figure includes the following: private investigator $850.00; medical expert 1050.00; criminal trial transcript 213.75; daily copy of transcript 1321.20.

We find all of these expenses reasonable. (We note that defendants do not request reimbursement for such items as photocopying and witness fees.) Accordingly, we award defendants expenses in the amount of $3434.95.

We have considered whether there are any mitigating factors presented by the plaintiff that would compel us to reduce the amount requested. It is widely agreed that the "willfulness" of the violation is of major importance. *See, e.g. Friedgood v. Axelrod*, 593 F.Supp. 395 (S.D.N.Y.1984). Issues involved in determining willfullness include whether attorney or client knew the filing was frivolous, whether the filing was used to harass or punish the opposing party, and whether the offending party unnecessarily increased the cost of litigation. *Eastway Construction Corp. v. City of New York, supra* at 573. We have no difficulty in finding that plaintiff's conduct was willful; plaintiff obviously knew his complaint was frivolous when it was filed; he clearly intended to harass the police officers by bringing this action.

The deterrent effect of an award of attorney's fees is obviously dependent on the extent of the sanctioned party's resources. The poorer the offender, the smaller need be the sanction to ensure the desired deterrent effect. Many courts have reduced awards based on inability to pay. We have examined with care the many factors involved in deciding whether there exists a proper circumstance for reduction of fee. Not a scintilla of information is present warranting a reduction of these fees. Plaintiff was given every opportunity to set forth any financial obligations which might lend approval of a reduction. Plaintiff asserts he takes home approximately $600 each week (Plaintiff's Deposition, October 23, 1984, pg. 5) and that he has two bank accounts, one $700, the other $400. (Affidavit in Opposition, Exhibit H) Plaintiff's lack of financial obligations supports our belief that the fee

should remain undisturbed. Where the plaintiff can afford to pay, the congressional goal of discouraging frivolous litigation demands that full and reasonable fees be levied. *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1028 (2d Cir.1979). We bear in mind that in our view the plaintiff has committed perjury under oath. We find this case particularly egregious since plaintiff has attempted to besmirch the careers of four policemen, each possessed of a commendable record in the Police Department. We emphasize that we are assessing fees and expenses solely against the plaintiff, not his counsel; we find no evidence that plaintiff's counsel was aware of his client's perjury. Rule 11 authorizes the imposition of sanctions upon the attorney, his client, or both. Where, as here, the client misleads his attorney and causes him to file frivolous papers, it is apparent that only the client should be sanctioned. *Friedgood v. Axelrod, supra* at 397.

For the foregoing reasons, we are constrained to, and do, order the following: (1) Plaintiff shall reimburse the defendants in the sum of $25,860.00 in attorneys fees and $3434.95 in expenses: (a total of $29,-294.95).

SO ORDERED.