929 F.2d 530
 ARADIA WOMEN'S HEALTH CENTER; Washington State National
Abortion Rights Action League; Planned Parenthood
of Seattle King County, et al.,
Plaintiffs-Appellees,
v.
OPERATION RESCUE; Richard Vicknair, et al., Defendants,
Denise R. Knight; Kimberly K. Bailey; Theresa E. Clark, et
al., Respondents-Appellants.
 No. 90-35110.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1990.
Decided April 5, 1991.
 
 Frank Conklin, Murphy, Bantz & Bury, Spokane, Wash., for respondents-appellants.
 Harry H. Schneider, Jr., Perkins Coie, Seattle, Wash., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, SCHROEDER and NORRIS, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is an appeal from an order imposing civil contempt sanctions upon individuals who took part in a demonstration which blocked access to an abortion clinic in Spokane, Washington, on March 3, 1989. These sanctions were imposed for violation of an injunction against such obstruction. The district court issued the contempt order in the course of underlying litigation brought by plaintiffs-appellees, Aradia Women's Health Center, other health care providers, organizations and individuals interested in preventing interference with women's ability to obtain lawful abortions. The complaint named as defendants certain individuals and an organization known as "Operation Rescue." This organization is an unincorporated association whose goal is to prevent women from obtaining legal abortions. The record before us shows that its membership is divided into local chapters and affiliates, but the national organization acts as an umbrella for these groups and publishes a newsletter. The local affiliates use protest strategies identifiable as those advocated by "Operation Rescue."
 
 
 2
 The district court granted plaintiffs' request for a preliminary injunction on January 10, 1989. The injunction came on the heels of a series of disruptive demonstrations in the State of Washington. The court enjoined the defendants "and any person acting in concert with defendants, from blocking access to abortion facilities and other activities in the state." It provided for sanctions of $500 for each prospective violation of the order by any defendant or person acting in concert with any defendant having notice of the injunction.
 
 
 3
 There is no serious dispute that on March 3, 1989, the individuals who are appellants here participated in a demonstration which took over the third and fourth floors of a medical building in Spokane where an abortion clinic was located. It was the first such demonstration after the district court's injunction and employed techniques similar to those employed in previous demonstrations by "Operation Rescue." The March 3 protestors identified themselves collectively as "Rescue Northwest," apparently heeding an admonition in Operation Rescue's latest newsletter advising local organizations to use names other than Operation Rescue in order to avoid lawsuits.
 
 
 4
 Police arrived at the demonstration site and first warned and then arrested several demonstrators on the third floor. Accompanied by an attorney representing some of the plaintiffs in this case who were also owners or tenants of the same building, the police went to the fourth floor where the clinic was located. The attorney read aloud to the demonstrators the preliminary injunction order. The police allowed the demonstrators some time to confer with their attorney, and gave them an opportunity to leave. After consulting with their attorney, the demonstrators, including the eighteen appellants in this appeal, refused to leave or to stop obstructing access to the medical offices. The police thereupon arrested them.
 
 
 5
 The plaintiffs-appellees moved the district court for civil contempt sanctions against these appellants on May 22, 1989. As of that time, none of the eighteen respondents had been named as parties to the injunction action.
 
 
 6
 The district court held a hearing in October on the motion for sanctions. The district court had before it significant and uncontradicted evidence of the respondents' participation on March 3 and their prior activities in conjunction with Operation Rescue. The individual respondents refused to testify on fifth amendment grounds.
 
 
 7
 The district court rejected the respondents' contentions that this was a criminal rather than a civil contempt proceeding. It found that the respondents had been provided ample notice of the terms of the injunction which they were accused of violating. It held them liable for contempt, even though they had not all been named in the original injunction order, because, as the district court explained, "plaintiffs have presented clear and convincing evidence that respondents acted in concert with Operation Rescue and the individual defendants ... and that respondents aided and abetted Operation Rescue's continued efforts to blockade abortion facilities in Washington." The district court imposed a $500 sanction on each respondent.
 
 
 8
 In this appeal, respondents-appellants continue to maintain that the proceeding should have been handled as a criminal rather than a civil contempt proceeding. They also contend that Operation Rescue is a non-entity which is not capable of being a party to a legal proceeding. If Operation Rescue could have been made a party, they maintain, it was not actually a party because it was not properly served. For the first time on appeal, they also challenge the subject matter jurisdiction of the district court, claiming that the plaintiffs had not stated a federal claim. Finally, they argue that if "Operation Rescue" is a party in the underlying action, the case should be remanded to state court because "Operation Rescue" did not join in the petition to remove the suit from that court, where it was originally brought, to federal court.
 
 
 9
 The district court correctly ruled that this was a civil contempt proceeding and that therefore it was not required to appoint a special prosecutor or to refrain from drawing adverse inferences from the appellants' refusal to testify on fifth amendment grounds. Appellants' position is that contempt in this case was used as a form of punishment for past conduct rather than as a remedy to correct the effects of ongoing unlawful conduct. Where a fine is imposed as a contempt sanction, it is considered remedial, and therefore civil, "when the defendant can avoid paying the fine simply by performing the ... act required by the court's order." Hicks On Behalf of Feiock v. Feiock, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-30, 99 L.Ed.2d 721 (1988). Thus, in order to evaluate the appellants' contention, we must look at the Order appellants violated to assess its purpose.
 
 
 10
 The Order read to the appellants as they occupied the Medical Building was as follows: "ORDERED.... [T]hat defendants' failure to comply with the Order shall subject them, and any person acting in concert with them or in participation with them to civil damages of $500 per day for each violation of this Order." The Second Circuit has held, in a virtually identical case, that for orders of this type "there is no doubt that the sanctions were entirely conditional and coercive." New York State National Organization for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir.1989) ("In short, defendants were forewarned ... that future violations would result in monetary sanctions. The prospectively fixed penalties were plainly entitled to coerce compliance with the court's order and to preserve the parties then-existing legal rights."), cert. denied, --- U.S. ----, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Thus, the appellants committed the act that subjected them to contempt by failing to comply with the court's prospective order. See Feiock, 485 U.S. at 633, 108 S.Ct. at 1430.
 
 
 11
 The fact that a hearing was held subsequent to the violation does not turn an otherwise civil contempt sanction into a criminal one. As with many civil contempt fines, "[t]he factual determination of noncompliance--the assessment of whether the standards showing contempt were satisfied--and the resulting imposition of fines necessarily occurred after defendants' ample opportunity to comply had come and gone." Terry, 886 F.2d at 1351. The court properly characterized its sanction as civil in nature.
 
 
 12
 We next turn to appellants' contention that they could not have been acting in concert with a party because "Operation Rescue," the party with which they allegedly acted, is merely a collection of individuals with similar values, not an entity amenable to suit. The district court concluded that "Operation Rescue" is an unincorporated association that is properly subject to suit. It agreed with the findings of the district court underlying the Second Circuit's opinion in Terry, supra, that "[r]egardless of its legal form, Operation Rescue is a cohesive entity that organized and carried out a massive and elaborate series of demonstrations." New York State National Organization for Women v. Terry, 697 F.Supp. 1324, 1331 (S.D.N.Y.1988). The record in this case is replete with evidence of Operation Rescue's activities, including publication of newsletters, showing it to be an organization with stated purposes and operating through affiliates in numerous states including Washington. Nor can there be any question from this record that these appellants acted in concert with Operation Rescue.
 
 
 13
 The next issue is the validity of appellants' contention that Operation Rescue was not a party because it was never served. An unincorporated association may be served by a delivery of "a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized [to receive service]." Federal Rule of Civil Procedure 4(d)(3). We have held that "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." United Food and Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir.1984). In this case a summons and a complaint were delivered to appellant Richard Andrews during another Operation Rescue blockade on November 12, 1988. The district court found that Andrews was a general agent of Operation Rescue. The appellees delivered additional copies of the summons to Andrews on March 6, 1989, but he expressly refused at that time to accept service on behalf of Operation Rescue. Appellants have never disputed the facts underlying the close relationship between Andrews and Operation Rescue. They dispute only whether Operation Rescue is a legal entity capable of having an agent. The district court ruled on the basis of the evidence before it that service on Operation Rescue was proper.
 
 
 14
 In this appeal, appellants do not ask us to examine the evidence or the legal authorities on which the district court relied in finding that Andrews was a general agent. Rather, they contend that the district court was bound to hold that Operation Rescue was not served because the parties had stipulated, inter alia, that "as of March 3, 1989, service of process had not been obtained on the defendant, Operation Rescue." As the district court pointed out, the plaintiffs on November 12, 1988, served the general agent of Operation Rescue, Richard Andrews, also a named defendant, with a complaint and summons addressed to "above named defendants." The record demonstrates beyond doubt that Operation Rescue's agents knew that Operation Rescue was the target of this suit. Appellants ask us to construe the stipulation as a concession on the part of plaintiffs that Operation Rescue's tactics had been successful and that it was never bound by the injunction. We do not believe the stipulation has such a destructive effect. Rather, we believe the stipulation recognizes the fact that in this case the plaintiffs were not able to effectuate direct service upon Operation Rescue. We agree with the district court that, in the circumstances of this case, Rule 4 did not require the plaintiffs to provide a separate summons expressly directed only to Operation Rescue. The stipulation is not fatal to the plaintiffs' claim.
 
 
 15
 Appellants' next contention, raised for the first time on appeal, is that the district court lacked subject matter jurisdiction over the complaint because their conduct did not violate the federal statute pleaded, 42 U.S.C. Sec. 1985. Whether there was or was not, on the merits, a conspiracy to violate appellees' constitutional rights in violation of section 1985 is not before us. At the time that the contempt orders were issued, the district court had not yet made any final decision on the merits of the plaintiffs' claims. Accordingly, the only issue properly before us concerns the district court's subject matter jurisdiction to determine whether there had been a violation of section 1985. Such subject matter jurisdiction in the nature of federal question jurisdiction existed beyond doubt by virtue of 28 U.S.C. Sec. 1331. Once the plaintiffs had made at least a reasonable claim that the statute applied, the district court had the power to preserve the status quo through injunction pending its final determination on the merits of that claim. United States v. United Mine Workers of America, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).
 
 
 16
 The appellants finally argue that, assuming that "Operation Rescue" is a party in the litigation, the district court lacks jurisdiction in the underlying action because "Operation Rescue" did not join the original petition to remove that action from state court to federal court. This contention cannot be sustained. If a district court conducts proceedings in a case after removal without objection as to the propriety of removal, the relevant jurisdictional question on an appeal from the result of those proceedings is "not whether the case was properly removed, but whether the federal district court would have had original jurisdiction in the case had it been filed in that court." Grubbs v. General Electric Credit Corp., 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). Because the underlying suit arises under 42 U.S.C. Sec. 1985, the federal district court would have had original jurisdiction. Therefore the appellants cannot now, on appeal, object for the first time to the removal.
 
 
 17
 The appellees have requested attorneys' fees for this appeal. An award of such fees is proper under 42 U.S.C. Sec. 1988. See Newman v. Piggie Pack Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). We therefore grant their request.
 
 
 18
 AFFIRMED.