**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DELAWARE HUMAN AND CIVIL RIGHTS COMMISSION, | ) | |
| | ) | |
| Plaintiff *ex. rel.*, | ) | |
| | ) | |
| ELAINE CAHILL, | ) | C.A. No. N24C-12-088 KMM |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTINE WELCH, ELMER YU and WILMA YU, | ) | |
| | ) | |
| Defendants. | ) | |

Date submitted: September 11, 2025
Date decided: October 9, 2025

## ORDER ON FEES

*Upon Defendants' Motion for Attorneys' Fees and Costs:* **DENIED**.

### A.    *Introduction*

After successfully moving to dismiss,[1] Defendants filed a Motion for Fees and Costs (the "Motion"), pursuant to the fee shifting provision in the Delaware Fair Housing Act (the "Act").[2]   Under Section 4615, attorneys' fees and costs may be

---

[1] D.I. 13.

[2] D.I. 19; 6 *Del. C.* § 4600 *et seq.*

awarded if an action was filed "for an improper purpose, such as to harass or to cause unnecessary delays or needless increase in the cost of litigation."

The purpose of the Act is to prevent and remedy discrimination in housing opportunities and therefore, it should not be construed in a manner that would chill assertion of viable claims out of fear of fee shifting.[3] That goal is balanced against a defendant's right to be protected against actions filed for an improper purpose.

Striking the appropriate balance and applying an objective standard, the Court finds that Defendants failed to satisfy their burden under Section 4615. The Motion criticizes various actors and proposes various alternative paths they could have taken to address the Fair Housing claim, but a lack of efficiency or success in the litigation alone, is insufficient to grant an award of fees. Defendants failed to show that the action was brought for an improper purpose. Therefore, the Motion is DENIED.

**B.    *Background*[4]**

The Delaware Human and Civil Rights Commission (the "Commission") filed this action on behalf of Elaine Cahill for an alleged violation of the Act. The Commission asserted that Mrs. Cahill is disabled, she utilizes an emotional support dog, and she erected a fence around her back yard to contain her dog (the "Fence").

---

[3] The application of Section 4615 appears to be a matter of first impression.
[4] The facts are taken from the Court's Memorandum Opinion, 2025 WL 2222967 (Del. Super. Aug. 5, 2025) ("Op."). Capitalized terms not defined herein shall have the meaning ascribed to them in the Memorandum Opinion.

2

Defendants reside next to Mrs. Cahill and claimed that the Fence violated the community's Deed Restriction. Defendants pursued an action in the Court of Chancery (the "Chancery Action") to enforce the Deed Restriction and compel Mrs. Cahill to remove the Fence.

Asserting that the Fence was a "reasonable accommodation" for her ongoing health issues, which she supported with numerous doctor's notes, Mrs. Cahill repeatedly requested that Defendants cease prosecution of the Chancery Action. They refused to do so.

Mrs. Cahill twice sought to stay the Chancery Action while she pursued a Fair Housing violation claim through administrative procedures.[5] The Court of Chancery denied those requests.[6] Ultimately, the parties to the Chancery Action filed cross-motions for summary judgment.

Mrs. Cahill filed a complaint with the Delaware Division of Human and Civil Rights (the "Division"), which after an investigation, found probable cause that Defendants violated the Act by continuing the Chancery Action in light of Mrs. Cahill's need for a reasonable accommodation.

The Commission, through the Delaware Attorney General's office, then filed this action asserting two counts: (I) violation of Fair Housing Act Section

---

[5] Op., at *3.
[6] *Id.*

3

4603A(a)(1) because Defendants/Chancery Petitioners refused to permit Ms. Cahill the reasonable accommodation of the Fence; and (II) violation of Fair Housing Act Section 4603A(a)(2) because Defendants/Chancery Petitioners refused to make a reasonable accommodation and modify the Deed Restriction to allow for the Fence.[7]

Before this action was filed, the Senior Magistrate issued a Final Report on the summary judgment motions, finding that the Fence violated the Deed Restriction and recommended an injunction requiring Mrs. Cahill to remove the Fence.[8] While exceptions to the Final Report were pending, the Court of Chancery stayed that action pending the outcome of this case.

This Court's Memorandum Opinion found that "the defendants\Chancery Petitioners' efforts to enforce the Deed Restriction are immunized under the *Noerr-Pennington* doctrine" and, accordingly, dismissed the complaint under Rule 12(b)(6).[9]

## C.    *The parties' contentions*

The Motion seeks an award of attorneys' fees and costs incurred in reviewing the Fair Housing complaint, communications with the Division and the Commission, legal research, defending the investigation, and prosecuting the motion to dismiss in this action, pursuant to 6 *Del. C.* § 4615.  Defendants argue that Mrs. Cahill's "delay

---

[7] *Id.*, at *4.
[8] *Id.,* at *3.
[9] *Id.*, at *9.

in raising her alleged disabilities[10] and 'reasonable accommodation' arguments, along with her refusal to put those issues before one judicial forum, was a strategy meant to create confusion, cause delays, and needlessly increase the cost to litigate a straightforward matter."[11]

Defendants accuse Mrs. Cahill of enlisting the Division and the Commission to help facilitate her delay strategy. They assert that both the Division and the Commission should have refused to investigate or pursue this action simply upon a review of the Chancery Action petition.[12] They further assert that the Division conducted an "unconstitutional investigation" by investigating for over 19 months instead of the "statutory mandate" of 100 days.[13] Similarly, they continue, the Commission waited 102 days to file the complaint, after Defendants elected to have the claims adjudicated in this court, rather than the statutorily mandated 30 days.[14]

Defendants argue that "the specious investigation and malicious prosecution" of the Fair Housing claims "abus[ed the] process to gain an advantage in another proceeding" that allowed Mrs. Cahill "to harass Defendants with baseless accusations" and increase their financial burden.[15]

---

[10] Mrs. Cahill first raised in the Chancery Action her need for a reasonable accommodation three months after she answered the petition. Op., at * 1.
[11] Motion, ¶ 14.
[12] *Id.*, ¶¶ 15, 17.
[13] *Id.*, ¶ 15.
[14] *Id.*, ¶ 17.
[15] *Id.*, ¶ 18.

The Commission contends there was no nefarious litigation strategy, and that it merely "sought to protect [Mrs. Cahill's] fair housing rights" "[i]n accordance with its duties under [the Act]."[16] The Commission also asserts that while the claims were ultimately barred by the *Noerr-Pennington* doctrine, this case was the first to apply the doctrine in the context of the Act.[17] Accordingly, the Commission requests that the Motion be denied.

## D. *The Fair Housing Act attorneys' fees provisions*

"Delaware law follows the American Rule, under which litigants are generally responsible for paying their own litigation costs."[18] "The Court may, however, order payment of attorney's fees if authorized by some provision of statute or contract."[19] Section 4615 provides:

> In any action, pleading or motion under [the Act], the…court hearing or reviewing the matter, may in its discretion, award attorneys' fees, costs and expenses to the respondent or defendant if an action was brought for an improper purpose, such as to harass or to cause unnecessary delays or needless increase in the cost of litigation.[20]

The parties cite no Delaware cases interpreting Section 4615, and did the Court find any case. Therefore, the Court must first determine how this statute is to be applied.

---

[16] D.I. 22 ("Opp."), ¶ 2.
[17] Opp., ¶ 2.
[18] *DeMatteis v. RiseDelaware Inc.*, 315 A.3d 499, 508 (Del. 2024).
[19] *McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, 2023 WL 574520, at *4 (Del. Super. Sept. 6, 2023) (internal citations omitted).
[20] 6 *Del. C.* § 4615.

The purpose of the Act is to eliminate discrimination in housing opportunities.[21] The Act is to be "liberally construed" so that "all persons may fully enjoy equal rights and access to housing for themselves and their families."[22] The Act contains two provisions that allow for an award of attorneys' fees: Section 4615 and Section 4612(o). Section 4615 is available to "***respondents and defendants***" when "an action was brought for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."[23] Section 4612(o) applies to "***prevailing aggrieved persons***"[24] and allows the court to award such persons reasonable attorneys' fees and expenses.[25] Accordingly, the person injured by discriminatory conduct merely needs to be successful in the action to be eligible for an award of fees. A defendant, however, must show that the action was brought for an improper purpose to be eligible for an award of fees. Of course, whether to award fees, and the amount of an award, is left to the discretion of the court.

---

[21] 6 *Del. C.* § 4601(a).

[22] 6 *Del. C.* § 4601(b).

[23] 6 *Del. C.* § 4615 (emphasis added).

[24] 6 *Del. C.* § 4602 ("'Aggrieved persons' includes any person who…[c]laims to have been injured, directly or indirectly, by a discriminatory housing practice…[b]elieves that such person will be injured, directly or indirectly, by a discriminatory housing practice that is about to occur; or… [i]s associated with a person having a protected status under [the Act] and claims to have been injured, directly or indirectly, as a result of discriminatory housing practice against such person having protected status.")

[25] 6 *Del. C.* § 4612(o) (emphasis added).

## 1. *Fees shifting provisions in federal civil rights statutes*

In deciding how to apply Section 4615, the United States Supreme Court's decision in *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*[26] is instructive.[27] The *Christiansburg* court addressed the standard for fee shifting under the prevailing party provision in Title VII of the Civil Rights Act of 1964.[28] Although the statute made no distinction between a plaintiff-prevailing party and a defendant-prevailing party, the court adopted different standards. The court noted that, based on the notion that the civil rights plaintiff was "'vindicating a policy that Congress considered of the highest priority,'" a prevailing plaintiff should ordinarily recover attorneys' fees, "'unless special circumstances would render such an award unjust.'"[29]

Recognizing two purposes of the fee shifting provision—to make it easier for a plaintiff to bring a meritorious suit and protect a defendant from a lawsuit that lacks foundation—the *Christiansburg* court adopted a different standard for a prevailing defendant: the court may award attorneys' fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought

---

[26] 434 U.S. 412 (1978).

[27] *Id.* at 413–14; 42 U.S.C. § 2000e-5(k). At the time of the *Christiansburg* decision, the prevailing party fee provision of Title VII was found at Section 706(k).

[28] 434 U.S. at 413–14 ("Section 706(k)…provides: 'In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . .'").

[29] *Id.* at 417 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400 (1968)).

in subjective bad faith."[30]  This *Christiansburg* standard has since been applied to the prevailing party attorneys' fees provision in the Federal Fair Housing Act[31] and other civil rights statutes.[32]

The Supreme Court, however, cautioned lower courts to

resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.... No matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.  Decisive facts may not emerge until discovery or trial.  The law may change or clarify in the midst of litigation.  Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.[33]

Adhering to the Supreme Court's instruction, courts in federal civil rights cases have recognized that an award of attorneys' fees to a prevailing defendant "is a conservative tool, to be used sparingly in cases in which the plaintiff initiated or

---

[30] *Id.* at 421.

[31] *See, e.g., Abdelhalim v. Lewis*, 90 F.4th 265, 271–72 (4th Cir. 2024); *Hatfield v. Cottages on 78th Cmty. Ass'n.*, 2023 WL 3163256, at *4 (10th Cir. May 1, 2023); *Deitch v. Medstar Medical Group, Southern Maryland LLC*, 2025 WL 712984, at *6 (D. Md. Mar. 5, 2024). All applying a *Christiansburg* analysis to 42 U.S.C § 3613(c)(2) ("In a civil action under [the Federal Fair Housing Act], the court, in its discretion, may allow the prevailing party…a reasonable attorney's fees and costs.").

[32] *See Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 157–58 (3d Cir. 2001) (applying *Christiansburg* analysis to fee shifting provision in Section 1983 and 1985 action); *see also, Mondero v. Lewes Surgical & Medical Assocs. P.A.*, 2017 WL 2221173, at *1 (D. Del. May 19, 2017).

[33] *Christiansburg,* 434 U.S. at 421–22.

continued to litigate a claim that the plaintiff knew or should have known was groundless, frivolous, or unreasonable."[34]

## 2.  *Superior Court Civil Rule 11*

The Court also looks to Superior Court Civil Rule 11 for guidance.  Rule 11(b) uses the same language as Section 4615 of the Act.[35]  The Delaware Supreme Court applies an objective standard applies to Rule 11.[36]  An award of attorneys' fees under Rule 11(b) is "an extraordinary measure and should only be imposed after careful consideration and for the purpose of providing redress for 'clearly egregious and abusive conduct.'"[37] Thus, "sanctions should be reserved for those instances where the Court is reasonably confident that an attorney does not have an objective good faith belief in the legitimacy of a claim or defense."[38]

---

[34] *Abdelhalim,* 90 F.4th at 272 (internal citations omitted). Federal courts consider several factors in determine whether to award fees to a prevailing defendant, "including whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or held a full-blown trial on the merits[,]'" whether the issue was one of first impression, and the controversy was "based sufficiently upon a real threat of injury to the plaintiff." *Barnes Found.,* 242 F.3d at 158.

[35] Rule 11(b) provides for attorney sanctions if "a pleading, written motion, or other paper…is…presented for *any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.*" Del. Super. Civ. R. 11(b) (emphasis added).

[36] *Crumplar v. Superior Ct.,* 56 A.3d 1000, 1008 (Del. 2012).

[37] *Toll Bros. Builders v. Williams*, 2024 WL 4514193, at *3 (Del. Super. Oct. 16, 2024).

[38] *Id.* (citation omitted).

**E.    *Analysis***

The purpose of the Act is to eliminate housing discrimination.[39]  It is to be liberally construed.[40]  A lower standard for the plaintiff-prevailing party fee shifting provision is consistent with the intent of the Act.  Being cautious not to dissuade valid discrimination claims, attorneys' fees under Section 4615 should be granted sparingly, and only in the circumstances where the defendant has shown an action was clearly brought for improper purposes.  The court will apply an objective test in making this determination.[41]

Defendants first take aim at Mrs. Cahill, arguing that she delayed raising her disability and conducted piecemeal litigation across two courts "over more than three and a half years" that required them to "argue numerous briefs on the issue between two forums."[42]  First, Defendants' conclusory allegations do nothing to bolster their claim for a fee award.  Second, the record belies their position.  While two motions to stay were filed in the Chancery Action, there was no delay in that proceeding due to the discrimination claim.  That action was filed in January 2022, and a stipulated scheduling order was entered in December 2022, setting trial for October 18, 2023.  The parties timely filed a pretrial stipulation and after the pretrial

---

[39] 6 *Del. C.* § 4601(a).
[40] 6 *Del. C.* § 4601(b).
[41] *See Crumplar*, 56 A.3d at 1008.
[42] Motion, ¶ 14.

11

conference on October 9, 2023, they agreed to submit the dispute on cross-motions for summary judgment. The opening and answering briefs were filed in accordance with the parties' stipulated schedule.

In this court, Defendants filed a motion to dismiss and now a motion for fees. Mrs. Cahill had the right to seek redress for her alleged discrimination claim pursuant to the administrative procedures in the Act.[43] Other than the fact that she sought to stay the Chancery Action and filed a claim with the Division, Defendants offer no support for their fee request. This is insufficient to warrant fee shifting.

Defendants next take aim at the Division. With no supporting allegations or evidence, Defendants challenge the Division's good faith belief in the claim for which it found probable cause of discrimination.[44] Defendants offer several options that the Division "could have and should have taken," but that does nothing to show that the Division's actions were for an improper purpose.

In support of the argument that the Division should have terminated its investigation upon a review of the Chancery petition,[45] Defendants cite *White v. Lee*,[46] but provide no analysis of the case. *White* is procedurally and factually distinguishable.

---

[43] *See* 6 *Del. C.* § 4610.
[44] Motion, ¶ 16.
[45] *Id.*, ¶ 15.
[46] 277 F.3d 1214, 1220 (9th Cir. 2000).

In *White*, plaintiffs led a campaign against the conversion of a motel into a multi-family unit for the homeless in Berkley, California.[47] Plaintiffs distributed flyers, "wrote to the Berkely City Council, spoke out before the Zoning Adjustment Board and at other public meetings, and published a newsletter with articles critical of the project."[48] Plaintiffs also filed an action seeking to enjoin issuance of a building permit due to a member of the Zoning Adjustment Board having a conflict of interest.[49] Plaintiffs successfully proved the conflict, but due to a particularity in the California statute, they were unsuccessful in obtaining an injunction.[50]

A housing-rights group took exception to plaintiffs' opposition to the project and filed a complaint with San Francisco's HUD office.[51] The HUD office, in turn, launched an investigation to determine whether plaintiffs' actions violated the Federal Fair Housing Act.[52] The HUD officials then subjected plaintiffs to improperly broad demands for documents and information, threatened plaintiffs with subpoenas and fines, and accused them of breaking the law.[53]

Plaintiffs filed an action against the HUD officials for violating their First Amendment rights. After discovery, the parties cross-moved for summary judgment.

---

[47] *Id.*
[48] *Id.* at 1220–21.
[49] *Id.* at 1230–31.
[50] *Id.* at 1225.
[51] *Id.* at 1221–22.
[52] *Id.* at 1222–24.
[53] *Id.* at 1222–24, 1239.

The court found that after the HUD complaint was filed, some investigation was warranted, but how HUD conducted the investigation violated plaintiffs' rights. The "undisputed facts" showed that HUD conducted the investigation "primarily if not exclusively" on plaintiffs' speech and not their lawsuit.[54] The *White* court concluded that the HUD officials violated plaintiffs' First Amendment speech rights by the overbreadth of the investigation, which "bore no relation" to the narrow basis for an investigation; namely, whether the speech was an incitement to imminent lawless action.[55]

Here, the record is devoid of facts relating to how the Division conducted its investigation. Simply because the investigation took longer than 100 days is insufficient to show the investigation was brought for an improper purpose. First, the statute sets a 100-day deadline "unless it is impracticable to do so...."[56] A provision Defendants ignore. And, Defendants provide no facts relating to practicability of concluding the investigation within the time period. Second, Defendants have not shown that the investigation was conducted for the purpose of

---

[54] *Id.* at 1234.

[55] *Id.* at 1230 ("The HUD officials' conduct cannot be squared with the First Amendment, no matter what rule is applied in evaluating the filing of the state-court lawsuit…[t]he scope and manner of the investigation violated plaintiffs' First Amendment Rights.").

[56] 6 *Del. C.* § 4610(f)(1).

delay, harassment, or to run up costs. There is nothing in the record to suggest that the Division did anything but proceed pursuant to its administrative authority.[57]

Finally, Defendants attack the Commission, making the same argument they made against the Division—the Commission should have refused to file the complaint upon a review of the Chancery petition. They further argue that the Commission "exacerbated the delays" by waiting more than 100 days to file the complaint, instead of the statutorily mandated 30 days.[58] Again, these conclusory allegations do nothing to show that this action was instituted for an improper purpose.

In their reply brief, Defendants attack Mrs. Cahills' medical records and claim they had "numerous" additional rights violated, such as their social contract with Mrs. Cahill. Defendants' attack on Mrs. Cahill's medical records would require this Court to assume that the grounds for the doctor's notes and Mrs. Cahill's underlying conditions were fabricated for litigation purposes. The Court will not engage in such speculation. Additionally, a breach of a "social contract," in this Court's view, is not grounds for fee shifting.[59]

---

[57] Defendants additionally argue that the Division should have intervened in the Chancery Action or sought an anti-suit injunction. Motion, ¶ 16. Where "prompt judicial action" may be needed Section 4610(e) grants the Division authority to seek temporary or preliminary relief in the Court of Chancery. 6. *Del. C.* § 4610(e). The Division's decision to not exercise this discretion does not support a finding of fee-shifting.

[58] Motion, ¶ 17.

[59] Defendants rely on a case where a violation of a deed restriction warranted the issuance of an injunction. *Slaughter v. Rotan,* 1994 WL 514873, at *3 (Del. Ch. Sept. 14, 1994). If the Fence is

Finally, Defendants ignore the fact that this was the first case in which the *Noerr-Pennington* doctrine was applied to a civil rights statute in Delaware.[60]

## F.    *Conclusion*

The Delaware Fair Housing Act is a remedial statute, designed to correct past discriminatory housing practices, provide remedies for violations, and promote equal housing opportunities.  It is drafted to encourage victims of discrimination to seek redress, which is why it contains a plaintiff-prevailing party provision.  Even with its liberal construction, the statute also protects defendants against actions filed for improper purposes.  To strike the balance, defendants are required to satisfy a much higher standard before being eligible for a fee shifting award.  Awarding fees and costs is a conservative tool, to be used only sparingly.  Awarding such fees based on conclusory statements would ignore the General Assembly's carefully crafted balance of the competing concerns.  This case simply does not warrant a fee shifting award.  Accordingly, the Motion is **DENIED**.

**IT IS SO ORDERED.**

/s/Kathleen M. Miller
Kathleen M. Miller, Judge

---

ultimately found in violation, Defendants are free to pursue whatever remedies they have available in the Chancery Action.

[60] *See Barnes Found.,* 242 F.3d 158 (whether the issue was one of first impression is a factor courts consider in determining whether a prevailing defendant is entitled to a fee shifting award).